THE SHIP VIRGIN, AND GRAF AND DELPLAT HER OWNERS, APPELLANTS V. ADAM VYFHIUS, JUNIOR, APPELLEE.

ADAM VYFHIUS, JUNIOR, APPELLANT V. THE SHIP VIRGIN, AND GRAF AND DELPLAT HER OWNERS, APPELLEES.

542

The case was argued by Mr Steuart, for the owners of the ship Virgin; and by Mr Mayer, for Mr Vyfhius.

Mr Steuart argued,

Mr Mayer, for the libellants, Vyfhius & Co.,

Mr Steuart, in reply.

Mr Justice STORY delivered the opinion of the Court.

This is the case of a libel in rem, upon a bottomry bond, originally instituted in the district court of the district of Mary-. land, and thence brought by appeal to the circuit court, and thence by appeal to this court. The ship Virgin belonged to Baltimore, and being in Amsterdam, in the kingdom of Holland, in November 1822, bond was there given to the libellant by the master, for the sum of three thousand two hundred dollars, and maritime interest at the rate of ten per cent, for advances asserted to be made by the libellant to supply the necessities of the ship on a voyage from Amsterdam to Balti-. more. The voyage was duly performed; and the bottomry loan not being paid by the owners, proceedings were duly commenced for the recovery thereof, and the suit has been protracted to the present period. The owners interposed a claim and defensive allegation, denying the validity of the bond: and at the hearing in the district court, a decree was entered, affirming its validity, and awarding to the libellants the full amount of the bottomry bond, with interest at the rate of six per cent from the filing of the libel. The circuit court, on the appeal, reversed this decree, pronounced the bottomry bond invalid, and then proceeded to entertain the suit in personam against the owners ; holding them liable for the necessary supplies and repairs of the ship, in the same manner as if the suit had been originally commenced in personam against the owners. And after some interlocutory proceedings, the circuit court awarded a final decree against the owners, for the sum of two thousand nine hundred dollars, being the amount ascertained by a report of commissioners, as "expen-

ditures and advances absolutely necessary, and made in the course of the usual employment of the ship," with interest from the time of the decree, until the payment of the amount thereof. From this decree both parties have appealed to this court, and the cause now stands upon the argument for a final decision.

The first question is, whether the bottomry bond was valid in its origin, and constituted a good lien on the ship. Several objections have been taken to its validity. In the first place, it is said, that the bottomry bond, though taken in the name of the libellant, Vyfhius, was, in fact, taken in trust, and for the benefit of Vanstaphorst and company, who were the consignees of the ship and cargo, and had ample funds of the owners in their hands to meet the necessary expenditures, if any were necessary; and therefore, they cannot now subject the ship to a bottomry lien. But we do not think that this objection is sustained as matter of fact by the evidence in the case. The only testimony to support it is a loose statement of Schimmelpennick, one of the partners of the house of Vanstaphorst and company; who stated to a witness, "that the expenses of the Virgin had amounted to about eight thousand guilders, and that they would not be so foolish as to make such an expense for Delplat, without securing themselves by a bottomry." This language is quite equivocal, and admits of different interpretations; and it does not appear upon what occasion, or under what circumstances it was used. It may mean, that they had declined to make the advances without a bottomry bond, without meaning to affirm, that one had been actually taken for their benefit. But, what is most important in the case, this declaration cannot be competent evidence against Vyfhius; who is not shown to have had any knowledge of it, or to have been in privity with Schimmelpennick; so that, as to him, it is the mere hearsay of a third person. And on the other hand, the master of the Virgin expressly disclaims any knowledge, that any of the advances were made by Vanstaphorst and company, and affirms that they were made by Vyfhius, at his request, through the instrumentality of a broker. We may then dismiss all further consideration of this objection, since the bottomry bond is not traced home to Vanstaphorst and company.

The next objection is, that the advances were not necessary for the supplies and repairs of the ship. This objection is not now fairly open upon the record. The second and last report of the commissioners expressly finds, that the sum of two thousand nine hundred dollars of the advances was absolutely necessary for the ship, as expenses and repairs in the common course of her employment. No exception was taken to this report by either party, and it was accordingly confirmed by the circuit court; so that it is not now open for review in this court, there not being any thing on its face impeaching its correctness. It is true, that the bottomry bond was taken for a larger amount; but that furnishes no ground of objection to the bond, except for the surplus; for a bottomry bond may be good in part, and bad in part; and it will be upheld by courts of admiralty, as a lien to the extent to which it is valid; as such courts, in the exercise of their jurisdiction, are not governed by the strict *rules of the common law, but act upon enlarged principles of equity*. There are many authorities to this effect; but it is only necessary to cite the cases of The Augusta, 1 Dodson's R. 283; The Tartar and the Nelson, 1 Hag. Adm. R. 169, 176. And, indeed, except so far as regards the maritime interest of ten per cent, the question would be unimportant; for it is notorious, that in foreign countries, supplies and advances for repairs and necessary expenditures of the ship, constitute, by the general maritime law, a valid lien on the ship; a lien which might be enforced in rem in our courts of admiralty, even if the bottomry bond were, as it certainly is not, void in toto.

The next objection is, that the supplies and advances might have been obtained upon the personal credit of the owners, without an hypothecation. Now, the necessity of the supplies and advances being once made out, it is incumbent upon the owners, who assert that they could have been obtained upon their personal credit, to establish that fact by competent proofs, unless it is apparent from the circumstances of the case. Now, not only is there no proof to this effect upon the record, but it is fairly repelled by the testimony of the master, as well as by the other circumstances of the case. When the ship sailed on her voyage from Baltimore for Amsterdam, she was exclusively owned by Delplat; and she, as well as her cargo, a great part

of which was also owned by Delplat, was consigned to Van-
staphorst and company. Delplat failed during the voyage;
and about that time assigned one third of the ship to Graf,
and the other two thirds to other persons. The cargo, on the
ship's arrival, was delivered, pursuant to the consignment, to
Vanstaphorst and company, and certainly could not be right-
fully withheld from them under the bills of lading. Delplat,
after deducting all his consignments, remained in debt to Van-
staphorst and company, in about nineteen thousand guilders.
And after they were apprised of Delplat's failure, and after a
negotiation of some weeks between them and the master for
advances, they declined to make any to him; and he was
thus compelled to obtain them elsewhere.

It is wholly immaterial in this case, whether Vanstaphorst
and company had funds in their possession, which ought to have
been advanced by them for the relief of the ship. It is sufficient
to justify the master, that he could not obtain them; and the
non existence of funds, and the non ability to get at them, must,
as to the master, be deemed to be precisely equal predicaments
of distress. It would not be very easy to convince any lender
of money, that he could safely trust to the personal security
of an insolvent debtor; and although Graf was not involved
in the failure of Delplat, yet his title was acquired on the eve
of Delplat's failure, and did not appear on the ship's papers, so
that a cautious lender might well hesitate as to the ability of
the master to bind Graf; even if it had appeared, which it
does not, that Graf's credit was so unquestionable at Amster-
dam, that his personal security, given by an acknowledged
agent, would have been satisfactory. But the truth is, that
the master's testimony negatives any other adequate means of
supplying the ship's necessities without resort to a bottomry
bond; and there is not the least reason to suppose that he did
not act with entire good faith, and from a consciousness that
funds could not otherwise be obtained. It is certainly incum-
bent on the owners, if they assert that such means existed, to
give some solid proofs in support of their assertion.

Then, again, it is objected that the supplies and repairs
were in the first instance made upon the master's credit. But
how were they made? There is not a tittle of proof that the
material men originally trusted to his personal credit exclu-

sively, waiving the lien which the foreign law would give on the ship for them, or the general responsibility of the owners. On the contrary, they might well trust to his credit, as auxiliary to these sources: and the fact that the master ordered the supplies and repairs before the bottomry bond was given, can have no legal effect to defeat that security, if they were so ordered by the master, upon the faith and with the intention that a bottomry bond should ultimately be given to secure the payment of them.

In truth, in cases of this sort, the bottomry bond is in practice ordinarily given after the whole supplies and repairs have been furnished, for the plain reason that the advances required can rarely be ascertained with exactness until that period. In a case before lord Stowell,(a) an objection of a similar nature was taken, viz. that the advances were made before the bottomry bond was taken; but that learned judge overruled it, and said that it was sufficient that it was the understanding of the parties at the time that the money should be secured by means of bottomry; and that it was of no consequence whether the money was advanced at once, and the bond immediately entered into, or whether the master received it from time to time in different sums, and gave a bond for the whole amount. And he added, what is very significant under the circumstances of the present case, that the party who lent the money, had a right, by the maritime law, to detain the ship and cargo until the debt was repaid; and it was only by the means of the bond, that the owners had the benefit of the liberation of their property.

In the next place, it is objected that the advances were for a voyage not authorized by the owners: that the original orders were for the master to get a freight for Baltimore or New York, and if he could not, then to proceed to New Orleans; whereas the master broke up his voyage and without any freight returned to Baltimore. Now, it may be admitted, that if a bottomry lender, in fraud of the owners, and by connivance with the master for improper purposes, advances his money on a new voyage, not authorized by the instructions of the owner, his bottomry bond may be set aside as invalid.

(a) La Ysabel, 1 Dodson's Rep. 273, 276.

But there is no pretence to say that if the master does deviate from his instructions, without any participation or co-operation or fraudulent intent of the bottomry lender, the latter is to lose his security for his advances, bona fide made for the relief of the ship's necessities. In the present case there is no proof that Vyfhius ever saw the master's instructions; much less, that he fraudulently co-operated with him in a wilful disobedience of the orders of the owner. A new and unexpected state of things had arisen. The owner had failed, and new owners had been substituted, with some of whom he had not had any communication. Under these circumstances he applied for advice to the friends of his former owners, and they advised him to return home; as not only prudent and proper, but as required by the change of ownership. His own judgment coincided with theirs; and there is no ground to assert that he did not act with entire good faith, and that under all the circumstances, the course adopted by him was not discreet and fit for such an emergency. To set aside a bottomry bond given under such circumstances, would be to impair in no small degree the general confidence of the commercial community in their security; and would overturn the great maritime policy upon which they have been hitherto held sacred and privileged liens.

We have thus considered the principal objections urged against the bottomry bond, and are of opinion that they are unmaintainable. The consequence is, that the bond must be upheld to the extent of the property pledged for the security of it. It has been said that the seamen have a prior lien on the ship for their wages, and that the amount of the wages ought first to be deducted. Undoubtedly the seamen have such prior lien, but the owners are also personally liable for such wages; and if the bottomry holder is compelled to discharge that lien, he has a resulting right to compensation over against the owners, in the same manner as he would have if they had previously mortgaged the ship.

But in strictness, no such question arises on the present record. Graf, one of the owners, has had the ship delivered up to him upon an appraisement, at the value of eighteen hundred dollars; and he has given a stipulation according to the course of admiralty proceedings, to refund that value, to

gether with damages, interest and costs, to the court. He is not at liberty now to insist that the ship is of less than that value in his hands; or that he has discharged other liens diminishing the value for which the owners were personally liable, in solido, in the first instance.

To the extent, then, of the appraised value of the ship, delivered upon the stipulation, the owners are clearly liable; for she was pledged for the redemption of the debt; and they cannot take the fund, except cum onere. But beyond this there is no personal obligation upon the owners. It has been correctly remarked by lord Stowell,(a) that the form of bottomry bonds is different in different countries; and so is their authority. In some counties they bind the owners; in others not; and where they do not, even though the terms of the bond should affect to bind the owners, that part would be insignificant; but it would not at all touch upon the efficiency of those parts, which have an acknowledged operation. In England and America the established doctrine is, that the owners are not personally bound, except to the extent of the fund pledged which has come into their hands.(b) To this extent, indeed, they may correctly be said to be personally bound; for they cannot subtract the fund, and refuse to apply it to discharge the debt. But in that case the proceeding against them is rather in the character of possessors of the thing pledged, than strictly as owners. In the present case, the value of the ship, the only fund out of which payment can be made, falls far short of a full payment of the amount due upon the bottomry bond. But this is the misfortune of the lender, and not the fault of the owners. They are not to be made personally responsible for the act of the master, because the fund has turned out to be inadequate; since, by our law, he had no authority by a bottomry bond to pledge the ship, and also the personal responsibility of the owners. The consequence is, that the loss, ultra the amount of the fund pledged, must be borne by the libellant.

But as the owners have had the full benefit of the bond under the appraisement and delivery during this protracted

(a) The Nelson, 1 Hag. Adm. Rep. 176.
(b) The Tartar, 1 Hag. Adm. Rep. 1, 13. The Nelson, 1 Hag. Adm. Rep. 169, 176.

controversy, it is but reasonable that they should be responsible for interest upon the appraised value, from the time when the delivery upon the appraisement took place.

The view which has been thus taken of the present case, renders it wholly unnecessary to consider whether a decree in personam could be made by the circuit court upon a libel and proceedings instituted in rem. That and the other questions respecting the exercise of the admiralty powers of the court, may well be left for decision when they shall constitute the very points in judgment.

The decree of the circuit court must be reversed; and a decree will be entered conformable to the opinion of this court, to be carried into effect by that court.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Maryland, and was argued by counsel; on consideration whereof, it is declared by this court, that the bottomry bond in the case stated is, and ought to be held valid for the sum of two thousand and nine hundred dollars, being the amount ascertained by the second and last report of the commissioners to be due to the libellant for expenditures and advances absolutely necessary, and made in the course of the *usual* employment of the said ship Virgin, and also for the additional sum of ten per cent, the maritime interest agreed on, and payable by the terms of the said bottomry bond, amounting, in the whole, to the sum of three thousand one hundred and ninety dollars, and that the said libellant is entitled to the said last mentioned sum, with interest thereon, at the rate of six per cent, from the commencement of the present suit to the time when the decree of this court shall be carried into effect by the circuit court. And it is hereby ordered, adjudged and decreed by this court accordingly. And it is hereby further ordered, adjudged and decreed, that the decrees of the district and circuit courts, so far as they differ from this present decree be, and hereby are, reversed accordingly. And this court, further proceeding to render such decree as the circuit court ought to have rendered in the premises, it is further ordered, adjudged and decreed, that the said claimant, Graf, do forth-

with pay into the said circuit court the sum of eighteen hundred dollars, being the amount of the appraised value of the said ship Virgin, delivered to him on stipulation as in the proceedings mentioned, together with interest thereon, at the rate of six per cent, from the 24th day of March 1824, when the same was delivered to him on stipulation as aforesaid, unto the day when the same sum shall be so paid into the circuit court, together with the costs of the district and circuit courts; and unless he shall do so within ten days after the said circuit court shall require the same to be done, that execution do issue in due form of law upon the stipulation aforesaid, against all the parties thereto. And upon the payment of such sums, then that the claimants, as owners of the said ship Virgin, be, and hereby are for ever exonerated from all other and further payment in the premises. And it is further ordered, adjudged and decreed, that this cause be remanded to the said circuit court, with directions to carry this decree forthwith into effect.