## ARMOUR & CO. v. FORT MORGAN S. S. CO., Limited, et al.*

(Circuit Court of Appeals, Fifth Circuit.   March 18, 1924.)

No. 4148.

Shipping ⬥➔53—Owner held not liable for loss due to unseaworthy condition of vessel, in view of shipper's contract with charterer.

Where a cattle company agreed with packer to procure cattle in other countries, to transport them to particular port in the United States, and to charter steamers for such purpose, and thereafter chartered a vessel with full complement of officers, seamen, engineers, and firemen for the transportation of such cattle under the orders and directions of the cattle company as charterer, and the bill of lading specifying the number of cattle being shipped, was subscribed in the name of the cattle company, by the master, the owner was not liable to the packer for loss due to unseaworthy condition of vessel, notwithstanding master's signature, since master's signature had reference merely to the description of the goods immediately preceding it, and not to obligations expressed by the instrument as a whole; the packer's contract for carriage being with the charterer.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel by Armour & Co. against the Fort Morgan Steamship Company, Limited, and others. Decree for respondents, and libelant appeals. Affirmed.

John D. Grace and M. A. Grace, both of New Orleans, La. (Edwin H. Grace, of New Orleans, La., on the brief), for appellant.

Geo. H. Terriberry, Frazer L. Rice, W. W. Young, Jos. M. Rault, Walter Carroll, Geo. Denegre, Victor Leovy, and Henry H. Chaffe, all of New Orleans, La., for appellees.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

WALKER, Circuit Judge. The appellant, Armour & Co., a corporation, libeled the steamship Fort Morgan, claiming that it was liable for loss due to the injury and death of some of a lot of 420 head of cattle shipped by appellant on that vessel at Port Limon, Costa Rica, to be delivered at Jacksonville, Fla.; the injury and death of such cattle being attributed to the alleged unseaworthy condition of the vessel when it started on the voyage. The basis of the asserted claim against the vessel was a bill of lading for the cattle issued to the appellant. That instrument was made by filling out a printed form used by the United Fruit Company, the following words being added thereto:

"Wherever United Fruit Company appears, read the Central American Cattle Co., Inc."

Under the heading in that instrument, "Shipper's Description of Goods," was the following:

"Quantities—500. Class and Contents of Packages—(Five hundred) head live steers (more or less)."

⬥➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied May 28, 1924.

In the space immediately below the just quoted words was the following:

"80 not shipped. Tho. Johannesen, Master."

Following the last quoted words were stipulations of the bill of lading, which concluded as follows:

"In witness whereof, the United Fruit Company, by its agent, has signed ——— bills of lading exclusive of nonnegotiable copies, all of the same tenor and date, one of which being accomplished the others stand void.

"Dated at Limon, C. R., Nov. 28, 1917.

"No. ———.

                    "[Signed]   The Central American Cattle Co., Inc.,
                              "By Tho. Johannesen, Master S/S Ft. Morgan."

The bill of lading is to be considered in the light of the following facts, which were disclosed: On October 3, 1917, the appellant and the Central American Cattle Company, a Louisiana corporation (herein called the Cattle Company), entered into a written contract which contained provisions to the following effect: The Cattle Company agreed to procure cattle in named Central American countries, to bring such cattle to Port Limon, or such other port as may be agreed upon by the parties, to charter and equip one or two steamers for carrying such cattle, and to transport them to Jacksonville, Fla., at a stated rate of ocean freight per head; ocean freight to be payable in New Orleans upon appellant's receipt of cable advice from its representative at the port of loading of the number of head loaded on steamer; Cattle Company to take care of cattle during voyage under supervision of supercargo appointed by appellant. Prior to the shipment in question the Fort Morgan, with full complement of officers, seamen, engineers, and firemen, was chartered by its owner to the Cattle Company for the period of 12 months, and at the time of the shipment in question was being operated under the orders and directions of the Cattle Company as charterer. The charter party provided for the charterers paying for the use of the vessel a stated lump sum per calendar month. It contained the following:

"That the owners shall provide and pay for all provisions, wages, and consular shipping and discharging fees of captain, officers, engineers, firemen, and crew; shall pay for the insurance of the vessel, also for all engine room and deck stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the services, * * * to be employed in carrying lawful merchandise including petroleum or its products, in cases, and passengers so far as accommodations will allow, * * * between any safe port and/or ports in the United States of America and/or West Indies and Gulf of Mexico, and/or Carribean Sea, and/or Central America (Magdalena river excluded), and/or South America, not south of the river Plate, as the charterers or their agents shall direct. * * * That the captain, although appointed by the owners, shall be under the orders and direction of the charterers as regards employment, agency, or other arrangements; and the charterers hereby agree to idemnify the owners from all consequences or liabilities that may arise from the captain signing bills of lading or otherwise complying with their orders and directions."

As above shown, the bill of lading was subscribed by the Cattle Company only, "By Tho. Johannesen, Master S/S Fort Morgan." That signature indicated the absence of intention to bind any one but

the charterer by the bill of lading. The act of the master in so subscribing the instrument does not indicate a purpose thereby to bind the ship or its owner. The instrument as a whole being so signed, it cannot well be inferred that the master, in signing the above-quoted statement in the space in the body of the instrument immediately below the statement under the heading "Shipper's Description of Goods," did so in a capacity different from that in which he signed the instrument as a whole, or that he intended thereby to make the bill of lading binding on the ship or its owner. His signature in the space mentioned evidently had reference only to the immediately preceding statement, which served the purpose of disclosing the exact number of cattle shipped. It is not to be inferred that it was intended to have reference to the contract obligations expressed by the instrument as a whole. The circumstances under which the bill of lading was issued, as well as its terms, indicate that it was not contemplated that the shipment in question would give rise to a liability in favor of the appellant of anyone other than the Cattle Company.

Before the cattle were received on board the ship the Cattle Company was under a contract obligation to appellant to transport the cattle from Port Limon to Jacksonville, to render the service as carrier called for by the bill of lading, and the appellant was aware that the service was to be rendered by the Cattle Company using for that purpose a vessel or vessels chartered by it, and operated under its orders and directions. We are of opinion that the circumstances attending the shipment, including the bill of lading purporting to bind the charterer alone, and the pre-existing contract between the shipper and the charterer, require the conclusion that the appellant's contract for the carriage of the cattle was with the charterer alone, and not with the ship or its owner. The appellant is not entitled to hold the ship or its owner liable for a breach of a duty imposed by the contract for the carriage of the cattle, as appellant's contract for such carriage was with the charterer, the Cattle Company, alone. Wagstaff v. Anderson, Law Reports 5 C. P. D. 171, 180; The Poznan (D. C.) 276 Fed. 418; Carver on Carriage of Goods by Sea (6th Ed.) § 158. Nothing in the terms of the charter party indicates that it was contemplated that the ship or its owner could be made liable for a breach of a contract of affreightment made by a shipper with the charterer.

We conclude that the court did not err in rejecting the claim asserted by the libel. Grounds other than those above mentioned were urged in argument in support of the just stated conclusion. It is unnecessary to consider or pass on such other grounds.

The decree is affirmed.