ARMOUR & COMPANY *v.* FORT MORGAN STEAM-SHIP COMPANY, LIMITED, ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 135. Argued January 14, 1926.—Decided March 1, 1926.

1. The liability of a ship as surety for damage resulting from her unseaworthiness to a shipment undertaken by her charterer, is re-

leased by a compromise between the shipper and charterer discharging the. primary obligation of the latter. P. 257.

2. A chartered ship is not liable for damage to a shipment from unseaworthiness, when the unseaworthiness was caused by her conversion by the charterer and shipper to a use not authorized by the charter-party. P. 258.

3. The existence of admiralty jurisdiction can not be established conclusively by allegations in the libel but depends upon the facts as revealed in the case. P. 258.

4. Admiralty jurisdiction over a libel based on maritime contracts is not defeated by the bringing in of non-maritime contracts by way of defence. P. 259.

297 Fed. 813, affirmed.

CERTIORARI to review a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court dismissing the libel in a suit *in rem* brought by Armour and Company against the Steamship *Fort Morgan*, to collect damages to cargo alleged to have been due to the unseaworthiness of the ship. The Fort Morgan Steamship Company defended as claimant and impleaded the Central-American Cattle Company.

*Mr. John D. Grace*, with whom *Messrs. M. A. Grace* and *Edwin H. Grace* were on the brief, for petitioner.

*Mr. Victor Leovy*, with whom *Messrs. George Denegre* and *Henry H. Chaffe* were on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This libel was filed on January 25, 1918, by Armour & Company against the steamship Fort Morgan in the federal District Court for eastern Louisiana. Recovery was sought for loss and damage to a shipment of 420, head of cattle received by the ship at Port Limon, Costa Rica, for delivery at Jacksonville, Florida. The charge was that unseaworthiness had caused her to list so heavily as to compel return to port and abandonment of the voyage,

and that thereby half of the cattle were killed and the rest seriously injured. The libel alleged that the vessel was engaged as a common carrier between the ports named; that the cattle belonged to the libelant; that the bill of lading signed by the master was issued after delivery of the cattle on board. The copy of the bill of lading annexed to the complaint was signed " The Central American Cattle Co., Inc. By Thomas Johannesen, Master S. S. Fort Morgan." It recited: " Freight prepaid as per contract subject to Live Stock Agreement."

The owner made claim, impleaded the Cattle Company, and showed that the actual transaction was very different from that set forth in the libel. The shipment was an incident of a contract made October 3, 1917, by the Cattle Company with Armour & Company to procure in Central American countries about 25,000 head of cattle and sell them to Armour & Company; to assemble these from time to time at Port Limon for rest, inspection and loading; to charter and equip two steamers; and by means of these vessels to transport the cattle from Port Limon to Jacksonville and make delivery there. The contract provided further for attendance of an Armour representative at the inspection, grading, weighing and loading at Port Limon; that the vessels should carry only cattle for Armour & Company; and that a supercargo representing them should have supervision over the care of the cattle during the voyage. It fixed the price per pound to be paid for different grades of cattle and the freight per head; and provided that payment of the purchase price and the freight be made at New Orleans upon receipt of cable advice from the Armour representative.

The Fort Morgan had been chartered by the Cattle Company. She listed when she left Port Limon and had to return to port and abandon the voyage. But she had been seaworthy when delivered to the Cattle Company as charterer and was thereafter. The loss is claimed to

have resulted from the abuse of the ship by the Cattle Company, under the supervision of Armour & Company's supercargo. The charter party, entitled a " Time Charter—West India Fruit Trade," provided the privilege of and facilities for erecting a light fruit deck to carry a load of fruit. At Port Limon she was, without the consent of the owner, converted into a cattle ship. On the deck, authorized as a fruit deck, cattle pens were constructed and the heavy cattle were loaded. Freight had not been paid when the bill of lading issued; nor was it ever paid. No payment for the cattle was ever made under the contract. After the voyage was abandoned, the Cattle Company brought suit against the Armours at New Orleans. Later the parties entered into an agreement to settle their differences out of court. The compromise provided for a new trade arrangement; for holding on joint account the surviving 200 head of injured cattle then at Port Limon; and for the payment by the Armours of $19,000 upon performance by the Cattle Company of conditions set forth in the new agreement. Seven days later this libel was filed. There was no reservation of right under the bill of lading, or of any rights against the ship. Through investigations incident to the defense the owner first learned the facts.

The District Court dismissed the libel with costs, finding the facts substantially as stated above. The libelant had insisted that the ship was liable because the master had signed the bill of lading; and that, having been unseaworthy, she would have been liable even without such signing, since the master had received the cattle on board. The court held, in an unpublished opinion, that while the vessel would ordinarily be liable for any damage resulting from unseaworthiness, there could be no recovery in this case, because the unseaworthiness had resulted from the conversion of the vessel into a cattle ship; that this conversion involved a change in the charter party which

the master was without authority to make, *Gracie* v. *Palmer,* 8 Wheat. 605, 639; that the owner could not be subjected thereby to liability; that, morever, under the terms of the charter party, the owner would be entitled to be indemnified by the charterers for any judgment in favor of Armour & Company; that the compromise made by Armour & Company with knowledge that the vessel was chartered barred this suit; and that, in any event, recovery could not be had on the allegations of the libel.

The Circuit Court of Appeals affirmed the judgment of the District Court, 297 Fed. 813.  It held that the bill of lading, although signed by the master, did not indicate a purpose to bind the ship; that this fact, taken in connection with the pre-existing contract, required the conclusion that the shipper's contract of affreightment was only with the Cattle Company; and that, under these circumstances, the ship could not be held.  That court did not pass upon or discuss the grounds of decision adopted by the District Court.  Nor did it refer to the well-established rule that the ship is ordinarily liable to the shipper upon an implied warranty of seaworthiness although a bill of lading signed by the charterer is given. See *The Carib Prince,* 170 U. S. 655, 660; *The Esrom,* 272 Fed. 266.  A petition for a writ of certiorari sought on the ground that this basis of liability had been ignored was granted.  266 U. S. 597.  The respondent had not opposed the granting of the writ; and it did not attempt here, in the brief and argument on the merits, to support the ground of decision stated by the Court of Appeals. It insisted that the judgment should be affirmed substantially for the reasons stated by the District Court.

The suit is brought to enforce the lien or privilege against the vessel which the maritime law gives as security for the contract of affreightment.  The contract contained in the bill of lading was that of the Cattle Company.  The bill of lading, which was signed by that com-

pany, is not to be treated as an isolated transaction. It referred to a contract between the parties. It was in fact given in part performance of the obligations assumed by the Cattle Company by the original contract to purchase the cattle, assemble them at Port Limon, sell them to the Armours, and transport them to Jacksonville. The compromise agreement substituted new rights and obligations for the obligations assumed by, and the liabilities incurred under, the original contract. Thereby, it discharged the primary liabilities of the Cattle Company to the Armours under both the original contract and the bill of lading to carry safely the cattle from Port Limon to Jacksonville. The discharge of this primary liability necessarily discharged also the liability of the ship as surety for the charterers' obligation set forth in the bill of lading. For this reason, and also because of the facts found by the District Court concerning the unauthorized conversion of the vessel into a cattle ship with the participation of the Armours, the libel was properly dismissed.

An objection to the jurisdiction taken by the owner both here and below must be noticed. On the face of the libel there was confessedly admiralty jurisdiction. The contention is that the facts developed later disclosed a transaction not wholly maritime, and that, for this reason, the libel should have been dismissed under the rule declared in *Grant* v. *Poillon,* 20 How. 162, 168–9. The District Court stated that it was " inclined to agree with the contention," but apparently did not pass definitely upon the matter. The Circuit Court of Appeals did not mention the objection. The decree entered was a general one dismissing the libel, as on the merits. If there was no jurisdiction, the decree should have recited that ground of dismissal, so as to be without prejudice.

The case is not of that class where the existence of jurisdiction is conclusively determined by the first pleading of him who institutes the suit. Compare *Clarke* v.

*Mathewson,* 12 Pet. 164; *Boston & Montana Mining Co.*
v. *Montana Ore Purchasing Co.,* 188 U. S. 632.   Juris-
diction in admiralty cannot be effectively acquired by
concealing for a time the facts which establish that it
does not exist.   Compare *Lambert Run Coal Co.* v. *Balti-
more & Ohio R. R. Co.,* 258 U. S. 377, 382.   We must,
therefore, consider whether the facts developed after the
filing of the libel preclude the exercise of admiralty juris-
diction.   The bill of lading and the charter party are
both maritime contracts and, hence, enforceable in a court
of admiralty.   *Morewood* v. *Enequist,* 23 How. 491; *The
Eddy,* 5 Wall. 481, 494.   The original contract to pur-
chase, assemble, and sell the cattle, to charter vessels and
therein transport the cattle to Jacksonville, and the agree-
ment of compromise, are not maritime contracts.   *The
Richard Winslow,* 71 Fed. 426; *The Ada,* 250 Fed. 194.
Both the original contract and the compromise agreement
are referred to in order to establish the fact that the
obligation for which the ship was surety had been dis-
charged.   The original contract was referred to, also, to
explain the relation of the shipper named in the bill of
lading to the charterer and in order to establish that by
reason of their co-operation in converting the vessel into
a cattle ship there was no liability.   Such uses of non-
maritime contracts to establish the absence of a valid
maritime claim, or a defence as distinguished from a coun-
terclaim [1] (see *The Eclipse,* 135 U. S. 599, 609), do not de-

---

[1] Also *Willard* v. *Dorr,* 3 Mason 161, 171; *Southwestern Transp.
Co.* v. *Pittsburg Coal* Co., 42 Fed. 920; *United Transp. & Lighterage
Co.* v. *New York & Baltimore Transp. Line,* 185 Fed. 386; *Anderson
& Co.* v. *Susquehanna S. S. Co.,* 275 Fed. 989, 991, aff'd in 6 F. (2d)
858.   Compare *The Electron,* 48 Fed. 689; *Meyer* v. *Pacific Mail
S. S. Co.,* 58 Fed. 923.   The application of Admiralty Rule 56 is
limited by similar considerations of jurisdiction.   *The Goyaz,* 281
Fed. 259; *Aktieselskabet Fido* v. *Lloyd Braziliero,* 283 Fed. 62;
*Reichert Towing Line* v. *Long Island Machine & Marine Const. Co.,*
287 Fed. 269.   See also *Red Cross Line* v. *Atlantic Fruit Co.,* 264
U. S. 109, 123.

prive the admiralty court of jurisdiction. No party to this suit sought to enforce any right under either of the non-maritime contracts.

*Affirmed.*

MR. JUSTICE STONE took no part in the decision of this case.