Let an order be prepared accordingly.

## THE NAVIGADORA NO. 73.

## MANHATTAN TANK BARGE CO. v. NEW JERSEY ALCOHOL & CHEMICAL CO.

District Court, D. New Jersey.

Aug. 7, 1930.

Barry, Wainwright, Thacher & Symmers and Macklin, Brown, Lenahan & Speer, all of New York City (McDermott, Enright & Carpenter, of Jersey City, N. J., and James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for libelant.

Louis O. Condit, of New York City (Horace M. Gray, of New York City, of counsel), for respondent U. S. Industrial Alcohol Co.

RUNYON, District Judge.

This motion is concerned with exceptions to a second amended libel in admiralty.

The action itself is based upon the fact that a tank barge, the Navigadora No. 73, laden with molasses, was tied up at a wharf in Newark, and, in the course of grounding at low tide, struck an obstruction which caused a partial overturning of the barge and damage both to barge and cargo, alleged to reach the respective sums of $9,000 and $18,000, or $27,000 in all.

The original contract herein was one for the sale of molasses from the Dunbar Molasses Company to the New Jersey Alcohol & Chemical Company, and, among the provisions of said contract, executed on or about January 21, 1926, was one to the general effect that the Dunbar Molasses Company would make deliveries of molasses in ten approximately equal monthly installments at the wharf of the New Jersey Alcohol & Chemical Company; that the molasses would be delivered in barges, for which barges the New Jersey Alcohol & Chemical Company agreed to have ready upon their arrival free and safe wharfage, at buyer's account.

640

Early in June, 1926, the barge grounded as above indicated, and later in the same month the New Jersey Alcohol & Chemical Company sold out its business plant to the United States Industrial Alcohol Company for a large monetary consideration and the assumption by the buyer of certain debts.

After this sale, and on August 10, 1926, the New Jersey Alcohol & Chemical Company was dissolved by action of its stockholders.

The respondent United States Industrial Alcohol Company has filed exceptions to the present amended libel, and sets forth:

(1) That the libel fails to state facts sufficient to constitute a cause of action in admiralty against the excepting respondent.

(2) That the excepting respondent is sued in the alternative.

(3) That the libel fails to set forth the contract referred to in Schedule 3 of the amended libel.

█ The basis for the second and third exceptions above outlined do not impress me as of sufficient moment or as being of such nature as to secure a dismissal of the amended libel herein.

The fact that the New Jersey Alcohol & Chemical Company is out of existence and cannot be served robs the alternative situation of the possible dangers and perils to which counsel referred during the course of his argument.

█ And, if the incorporation of the entire original contract in the libel is deemed necessary for respondents' purposes, there are ways and means for attainment of the end sought which do not involve a dismissal of the entire proceeding.

The first exception, on the other hand, presents a much more serious question.

█ Because of the fact that the original contract for the sale of the molasses contains an agreement on the part of the New Jersey Alcohol & Chemical Company to have ready certain free and safe wharfage upon the arrival of the various installments of molasses, the libelant herein has treated the contract as maritime in its nature, and instituted its action in admiralty.

The respondent United States Industrial Alcohol Company claims that, under the circumstances of the case, admiralty does not possess the requisite jurisdiction, and therefore files its first exception.

As indicative of libelants' position and reason for instituting its action in admiralty, the following from the argument of counsel is appropriate:

"Now we say that that contract, or so much of that contract as provided that the molasses should be delivered at the purchaser's wharf in Newark, and that they should furnish a free and safe berth for those vessels, is maritime in its nature."

This action concededly is an action in contract, and the contract was one for the sale of molasses.

As I interpret the circumstances, the provisions regarding the wharf and the free and safe berth were simply incidental to the main purpose of the contract, and were therefore in nowise controlling in any such sense as to make admiralty the proper forum within which to try and settle the issues.

In the case of The Ada (C. C. A.) 250 F. 194, 195, the question of admiralty jurisdictions over matters not wholly maritime claimed the court's attention, and each of the three Circuit Judges felt impelled to express himself therein.

Judge Ward delivered the opinion of the court, and spoke in part as follows:

"Evidently the whole controversy could have been disposed of in an action at law, but the jurisdiction of a court of admiralty is confined to maritime subjects. It cannot, having obtained jurisdiction, dispose of nonmaritime subjects, for the purpose of doing complete justice, after the manner of courts of equity. * * *

█ "It is well established that a contract enforceable in admiralty must be wholly maritime. Grant v. Poillon, 20 How. 162, 15 L. Ed. 871. * * * In Turner v. Beachem, Taney, 583, Fed. Cas. No. 14,252, Mr. Justice Taney held to the same effect, saying:

" 'And I consider it to be a clear rule of admiralty jurisdiction that, although the contract which the party seeks to enforce is maritime, yet, if he has connected it inseparably with another contract over which the court has no jurisdiction, and they are so blended together that the court cannot decide one, with justice to both parties, without disposing of the other, the party must resort to a court of law, or a court of equity, as the case may require, and the admiralty court cannot take jurisdiction of the controversy. * * * ' "

█ Judge Rogers said in part:

" * * * The jurisdiction of the admiralty courts is restricted to maritime subjects. The contract involved is plainly a contract of sale. For a contract to fall within the admiralty jurisdiction, it must concern transportation by sea, relate to navigation or maritime employment, or be one of navigation and commerce on navigable waters. * * * "

641

While Judge Hough said:

"The rule that a contract, to be maritime, and therefore within admiralty jurisdiction, must be 'wholly maritime,' means that the principal subject-matter of agreement gives character to the whole. This construction of the phrase was adopted by this court in The Pennsylvania, 154 F. 9, 83 C. C. A. 139."

The principles set forth in the foregoing case, although more or less in the form of dicta, are altogether sound, and, as I view them, applicable to the case under consideration.

I am therefore constrained to sustain the first exception as filed by the respondent United States Industrial Alcohol Company, and to rule that libelant has failed to set forth a proper cause of action for admiralty jurisdiction.