## THE PAUL L.
### No. 13177.

District Court, W. D. Washington, N. D.
Feb. 16, 1933.

538

See, also (D. C.) 59 F.(2d) 223.

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for libelant.

Dykeman, Monheimer & Griffin, of Seattle, Wash., for respondents.

NETERER, District Judge.

The libelant seeks to condemn and sell the Paul L, 71 feet long, 17 feet 6 inches beam, depth 8 feet, 100 horse power, and judgment in personam against the owner to satisfy a claim of $3,094.50, with interest from October 5, 1929.

The libelant claims to have sold to the owner and master of the Paul L certain fishing netting to be used in the Paul L. The claimant-respondent denies the purchase of the netting, or any indebtedness thereon, and pleads limitation of action by provision of the laws of California in which state the contract was made, which limits the time in which suit may be brought to two years, and then alleges by affirmative defense that the respondent was the owner of two fishing vessels, tackle, apparel, engine, furniture, etc., each staunch and seaworthy and suitable for engagement as purse seine boats to catch sardines and other fish off the California coast where the fishing was to be done, by which agreement the libelant agreed to furnish the netting and to purchase all of the sardines caught in the operation of the boat; that libelant was to receive one share of the proceeds of such fishing operation, on a basis of twelve shares, each member of the crew of eight to receive one share, the boat three shares, and the seine one share, which was also the custom; that the libelant was to ship the netting to Seattle, the respondent to employ immediately a crew for the season's operation, make the netting furnished by libelant into a seine, and treat the seine with tar for the preservation and use of the same; that he carried forward such work, and, when he was ready for the voyage from Seattle to San Pedro to engage in fishing, libelant wired to respondent not to come to the fishing grounds; that to carry forward the understanding and agreement he incurred obligations in the sum of $1,000; and that he would have made a profit in payment of his services in the sum of $10,000; therefore the

respondent prays that the libel be dismissed and he have judgment over.

The court finds that libelant is engaged in the sea food products enterprise, and purchases many sardines from fishermen during the fishing season off the California coast, which extends from November to April of each year; that during the latter part of September, or the first part of October, 1929, an agreement was made whereby the respondent was to fish his boat on the fishing grounds off the California coast, and the libelant would purchase all of the fish, within a certain limitation; twenty boats were to engage in fishing; each boat was limited to one-twentieth of the sardines used by libelant.

For the purpose of equipment, the respondent, although able to finance himself and boat, sought from libelant netting to make into a purse seine, suitable for that purpose. What the parties did following the conversation should more nearly interpret their agreement. The libelant gave to the respondent a letter to Hendry & Co. directing that netting be delivered to respondent for his requirements, and payment guaranteed by libelant. Hendry & Co. say it was charged to respondent and the Paul L and libelant. The netting was shipped to respondent at Seattle, not to the boat. No statement was rendered to respondent, but was rendered to libelant, who paid the account.

The respondent had two fishing boats, each suitable for the purpose. The boat was not mentioned in shipping bill. Upon arrival in Seattle, the netting was taken to the Fishermen's Dock. The respondent employed a crew of men to equip the netting with the proper cork and lead and lines, and converted it into a purse seine. For this purpose the respondent purchased corks and lead and twine in the amount of $434.90. He expended for tar, rope, etc., $219.09; labor in fixing the netting, $675; freight, $47.40; and respondent's service in said preparation, $100; truckage, $13; team, $5—a total of $1,059.49.

The netting, nor completed seine, was at no time placed upon the Paul L; nor was it placed upon any other boat, but was kept in the Fishermen's Dock.

After these expenditures had been made, and the seine constructed from the netting, corks, lead, and lines, and the boat was about ready to sail, on the 4th of November, the libelant wired respondent: "Sorry to tell you that there are more boats down here than what canneries can use so please dont come down." Thirty boats had been engaged instead of twenty, as agreed with respondent.

Thereupon the respondent wired to the libelant asking what he should do with the netting, and received a response, on November 6: "Please ship net to San Pedro for us." The net was not shipped; nor was arrangement made for shipping the same by libelant, or anything done to pay for work done on the netting, or request made by respondent therefor.

No statements were sent by the libelant to the respondent demanding payment or other disposition of the netting. It lay in a corner of the Fishermen's Dock, and by reason thereof had deteriorated so a person could tear it apart with his hand, and had no value for purse seine. Respondent then sold it for $90. One witness testified that he made demand by letter upon respondent, but the letter sent is not demanded or carbon copy produced, and making demand is foreign to such party's duty in his employment, and it was not received by respondent. From the testimony, I do not believe he sent it. No steps were taken by libelant or interest manifested with relation to the netting for two years and twelve days after the netting was shipped, when this libel was filed against the Paul L and the owner. By way of parenthesis, it may be said that the statute of limitations has no application, since the netting was to be paid for out of the first catch of fish, if at all.

The value of one share in the operation of such a boat and crew for the fishing season on the fishing grounds was from five to six hundred dollars a share. The owner was unable to fish during the fishing season for which he was engaged; his boat was not employed, and his crew was in enforced idleness. All of the corks and lead and the lines furnished by the respondent in fixing the netting for use were detached from the netting after the receipt of the telegram countermanding the fishing engagement and directing that netting be sent to libelant at San Pedro.

The respondent lost the season's fishing for his boat and for himself, and on the basis of three shares to the boat, one share to the net, and one to the master, he being one of the crew, and each member of the crew of eight to receive one share, the loss, assuming he purchased the netting, should be at the lowest estimate of loss: Three shares to the boat, $1,500; one share to the net, $500; one share to the owner or master, $500—or a total of $2,500.

The libelant objects to the sufficiency of the proof and the materiality of such testimony, under the issues in the case. The respondent fished in these waters during preceding seasons with the same boat, and his testimony as a fisherman and his previous experience as such in the same ground is competent; but better proof is not available, and no other proof was offered by the libelant. Nor was this contradicted; nor is the claim speculative future profits. It entailed the loss of present employment for which money was expended in preparation made.

The respondent's damages must in good conscience be given consideration. When a fisherman invests his money and employs a crew, prepares his boat, and is ready to enter upon an engagement, and it is countermanded, it would be a preposterous condition if such party's damages should not be given consideration. If the boat had fished, the expense of making a purse seine from the netting would have been borne by the owner and seamen, but in the circumstances there should be added to the damages the amount paid to the seamen, $675, which, added to the $2,500, totals $3,175. This should be offset against the amount of the claim, and, if so offset, there is no recovery.

Before entering decree, the court must determine admiralty jurisdiction. While admiralty does not give equitable relief, it does apply equitable principles, and acts within the sphere of its jurisdiction, and administers justice ex æquo et bono (agreeable to what is good and right). "In deciding ultimate rights of parties from considerations of conscience and justice and humanity, admiralty sometimes mitigates the severity of contract and moderates exorbitant demands." Benedict on Admiralty (5th Ed.) § 70. The Hiram, 14 U. S. (1 Wheat.) 440, 4 L. Ed. 131; The Virgin, 33 U. S. (8 Pet.) 538, 8 L. Ed. 1036.

Admiralty jurisdiction was heretofore challenged, but on the face of the libel admiralty jurisdiction was stated. The evidence on trial developed a condition which shows that the libel concealed jurisdictional facts, and the prior ruling on the jurisdictional facts does not confer jurisdiction when none in fact existed. Armour and Co. v. Fort Morgan Steamship Company, Limited, 270 U. S. 253, 46 S. Ct. 212, 70 L. Ed. 571. The contract to buy fish is not a maritime contract. The Navigadora No. 73 (D. C.) 45 F.(2d) 639. And interrelated with this contract is the guaranty of the libelant to Hendry & Co. for the netting, not maritime. Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Company (C. C. A.) 151 F. 440. The sale of the netting to the Paul L would be maritime, if furnished to and delivered to the boat; but the libelant, if it could be subrogated to the seller of the netting, would have interwoven and interlocked with sale of the netting two nonmaritime contracts— a sale of fish and guaranty for netting. To paraphrase Justice Brandies in Armour & Co. v. Fort Morgan Steamship Company, Ltd., supra, the contract to buy the fish and guaranty of payment of the netting and sale and delivery of the netting to respondent all together form one contract, and are not, as a whole, a maritime contract. The three are in one; neither would be complete without the others.

I think, from the conduct of the parties subsequent to the contracts, that title to the netting did not pass to the respondent, and, whatever the arrangement, it was not maritime. Grant v. Poillon, 61 U. S. (20 How.) 162, 15 L. Ed. 871. The relation of the netting to the Paul L at no time was open and obvious. The principle of hypothecation at no time operated. The netting, as furnished to the owner, was not a useful utility, and before it could become such it had to be built into a purse seine, requiring corks, lead, lines, and additional netting, and time to construct. This was all at additional expense of the owner, and while in his possession, and, before contact was made and before lien in admiralty could attach to the vessel, the contract was severed. The netting bears the same relation to the Paul L as though shipped to another port for converting it into a purse seine, when completed to be carried to the Paul L.

The Paul L (D. C.) 59 F.(2d) 223, 1932 A. M. C. 658, has no application here. Nor have the other cases. The netting was not furnished to the boat by the libelants. Admiralty has no jurisdiction, and the libel for that reason is dismissed for want of jurisdiction. It would have to be dismissed in any event from considerations of equitable principles and good conscience.