**O. MAIRE, Inc., et al. v. THE YAKA et al., and four other cases.**

United States District Court
S. D. New York.
Jan. 15, 1948.

Supplemental Opinion Feb. 14, 1948.

Hill, Rivkins & Middleton, George B. Warburton, and James M. Hastie, all of New York City, for O. Maire et al.

Atkins & Weymar and Horace T. Atkins, all of New York City, for Maritime Terminal Co., Inc.

Lawrence W. McKeown, of New York City, for Associated Merchandising Corporation.

Michelsen & Elliott and Rolf T. Michelsen, all of New York City, for Neptune Shipping, Inc.

Bailey & Muller and Julius F. Steinbrenner, all of New York City, for Davla Bros., Inc.

Coller & Coller and Edward H. Coller, all of New York City, for Harry P. Jansen.

Foley & Statt and Milton James, all of New York City, for Compagnie Generale Transatlantique.

Gay & Behrens and Edward J. Behrens, all of New York City, for Waterman S. S. Corp.

John F. X. McGohey and William H. Postner, both of New York City, for the United States.

Kirlin, Campbell, Hickox & Keating, L. de Grove Potter, and Walter P. Hickey, all of New York City, for United States Lines.

BONDY, District Judge.

Each of the five above entitled libels was filed to recover for loss of and damage to cargo shipped on the steamship "Yaka" from Le Havre to New York in November, 1945.

The issues in all of the suits being the same, the unopposed motion of the United States, one of the respondents, to consolidate the suits is granted.

The United States also moves under Admiralty Rule 56, 28 U.S.C.A. following section 723, for permission to serve in the consolidated proceeding a petition impleading Waterman Steamship Corporation, United States Lines Company, Maritime Terminal Co., Inc., Neptune Shipping, Inc., Harry P. Jansen, each of whom has already been made a respondent in one or more of the libels, and in addition Henry H. Pate, doing business under the name of Standard Bureau of Investigation, who was not a party to any of the libels. The right to implead Henry H. Pate is not questioned. This motion is, however, opposed by Waterman Steamship Corporation on the ground that the filing of an impleading petition by one respondent against another respondent already in the suit to assert a remedy over is not authorized by Admiralty Rule 56, which provides that a respondent may "bring in" a person who may be partly or wholly liable either to the libellant or to such respondent by way of remedy over, contribution or otherwise, growing out of the same matter, that process may issue and be served, that the suit shall proceed as if such person had been originally proceeded against, that such "new party" shall answer the libel, that the petitioner shall give a stipulation to pay any "new party" brought in by such process all costs and expenses awarded against the petitioner and that the "new party" shall give the same bonds or stipulations which are required in like cases from parties brought in under process issued on the prayer of a libellant.

The purpose of Rule 56 was the avoidance of a multiplicity of suits growing out of the same matter. Notwithstanding that the rule may be interpreted as precluding the impleading of a respondent already a party to the suit, all proctors herein conceded on the argument that it has been the invariable practice so to do. Moreover, before Admiralty Rule 56 was adopted, it was held that a respondent may file a petition stating a claim against another respondent already in the suit, and that without such a petition no relief could be granted in favor of one such respondent against the other. Vane v. A. M. Wood & Co., D. C., 231 F. 353, 356. Besides, in Lamborn & Co. v. Compania Maritima Del Nervion, D. C., 19 F.2d 155, 156, where one respondent sought to file a petition under Admiralty Rule 56 against another respondent already in the suit, Judge Augustus N. Hand stated: "Under this case (Vane v. A. M. Wood & Co., supra) I should certainly allow the petition proposed under the fifty-sixth rule to be filed, except for my belief that the cause of action asserted is not within the jurisdiction of this court."

The petition to implead may be regarded in any case as the setting up of cross-claims by one respondent against others. As such, it may properly be filed. See 1 Moore's Federal Practice, p. 754. Contra, The Charles F. Harris, 1923 A.M. C. 706, 708.

Waterman Steamship Corporation also opposes the motion for leave to implead it on the ground that the General Agent Service Agreement between it and the United States is not maritime and the cause of action alleged against it is not within the admiralty jurisdiction of the court. The respondent United States urges that the agency agreement with the Waterman Steamship Corporation as well as the Berth Agent Service Agreement entered into by it with United States Lines Company contain separable maritime and non-maritime provisions, that the proposed petition contains causes of action against the General and Berth Agents based solely on mari-

time provisions relating to care and loading of cargo, and that consequently admiralty has jurisdiction thereof within the rule of Eastern Massachusetts St. R. Co. v. Transmarine Corporation, 1 cir., 42 F.2d 58, certiorari denied 282 U.S. 883, 51 S.Ct. 86, 75 L.Ed. 779. Under the General Agent Service Agreement Waterman Steamship Corporation was to "manage and conduct the business of vessels assigned to it," "maintain the vessels in such trade or service as the United States may direct," "equip, victual, supply and maintain the vessels," as well as to collect all moneys due the United States under the agreement and account therefor, procure the master subject to the approval of the United States, such master to be an agent and employee of the United States and to exercise full control of management and navigation of the vessel, procure the officers and men who were to be subject only to the orders of the master, issue or cause to be issued to shippers freight contracts and bills of lading and arrange for the repair of the vessels.

The Berth Agent Agreement required the United States Lines Company to "provide and pay for all fuel, fresh water, stevedoring and other cargo handling expense," as well as to "perform all of the customary duties of an agent in conducting the business of the vessels," collect all moneys due the United States and account therefor, and "issue or cause to be issued to shippers customary freight contracts and bills of lading."

The only basis of liability of the respondents United States, Waterman Steamship Corporation and United States Lines Company alleged in the libels is the violation by each of them of its obligations as a common carrier of goods by water for hire. In its proposed petition the United States alleges that the loss or damage, if any, to the libellants was due, among other things, not only to breach of contract but also to negligence of Waterman Steamship Corporation in connection with care and protection of the cargo on the vessel at Le Havre, during the voyage and during discharge from the vessel at New York, and to negligence of the United States Lines Company in loading the vessel at Le Havre, in safeguarding the cargo during loading, and while on the vessel at Le Havre and during the discharge thereof at New York, by reason of which negligence the agents should indemnify the United States to the extent of any liability on its part to libellants. Said proposed petition recites Article 16(c) of both agency agreements which provides that "In the event * * * Agent shall perform any stevedoring, terminal * * * or similar service for the vessels hereunder at commercial rates, the * * * Agent shall have all the obligations and responsibilities of the person performing such services under the standard or other approved form of contract with the United States or, in the absence of such standard or approved form, under usual commercial practice."

By its agreement to operate the "Yaka," the Waterman Steamship Corporation agreed to maintain the "Yaka" in trade. This was a direct obligation of the Waterman Steamship Corporation and cannot be construed as an agreement to obtain others to perform that duty. Similarly United States Lines Company agreed to provide and pay for all stevedoring in the absence of other agreements of the United States for such items. This was a direct obligation, the performance of which could not be excused by a failure to obtain others to perform the service. Though the Supreme Court recently stated in American Stevedores, Inc., v. Porello, 330 U.S. 446, 456, 67 S.Ct. 847, 91 L.Ed. 1011, that "admiralty jurisdiction over contracts partly maritime and partly non-maritime in nature is doubtful," it has been held that admiralty has jurisdiction over separable maritime provisions of a contract not wholly maritime. Eastern Massachusetts Street Ry. Co. v. Transmarine Corporation, supra; Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 2 Cir., 19 F.2d 777, 779, certiorari denied 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421. To the extent that the proposed petition asserts causes of action against the agents based on the breach of their separable maritime obligations to maintain the "Yaka" in trade and to provide stevedoring, such petition would appear to be cognizable in admiralty.

But however this may be, the allegations of negligence of the agents in actually loading, unloading and caring for the cargo, though not entirely consistent with other allegations in the proposed petition, set forth maritime torts for which the agents would be liable to their principal in tort, American Law Institute, Restatement of the Law of Agency, Sections 379, 401c, regardless of whether or not the agency agreements required the agents only to procure maritime services and not to render them. See Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010, 1011. It has been held that a non-maritime contract may "give rise to certain obligations and duties to a vessel which would render the contracting party liable in tort for his negligent failure to fulfill these obligations." Transmarine Corporation v. Fore River Coal Co., D.C., 28 F.2d 624, 625. In so far as the libels allege breach of duty on the part of the United States, it is entitled to prove its claims that its agents undertook to perform maritime services within the scope of their employment and are primarily liable in tort for their failure to exercise due care therein. The Blue Mountain, etc., Line v. Youghiogheny & Ohio Coal Co., D.C., 20 F.Supp. 165, 167.

Both Waterman Steamship Corporation and United States Lines Company oppose the proposed petition on the ground that the United States has agreed to hold them harmless from all liability to it. This objection would most properly be urged as a defense to the claim of the United States at the trial when the development of the facts will permit a conclusion as to whether or not the indemnity provisions are applicable, especially in view of Article 16(c) of the agreements, supra, which provides that in case the agents perform any stevedoring they incur certain responsibilities.

Both agents urge that the discretion of the court should not be exercised in favor of permitting the United States to claim indemnity from them in view of the fact that it appeared for them, filed an answer, attended to inspection and discovery on behalf of them and otherwise represented them in one of the suits for a time before suggesting to them that its defense of them would be without prejudice to any defense it might have to any claim by them for indemnity, whereupon they obtained their own counsel. In the absence of any showing that the United States acted in bad faith, obtained any undue advantage or prejudiced the interests of any of the agents, all of which can be determined by the trial judge, the court is of the opinion that it should not be deprived of its rights. This is especially so, in view of the fact that whatever information it acquired while representing the agents was expressly available to it under its agreements with them.

The United States in its proposed answer to the petition of the United States Lines Company alleges that the claim for indemnity asserted therein is non-maritime. This is not any reason for denying the United States the right to assert a claim against that agent, to which the agent may assert any defense it has available, even though such defense were based on a non-maritime contract. Armour & Co. v. Ft. Morgan S. S. Co., 270 U.S. 253, 259, 46 S.Ct. 212, 70 L.Ed. 571.

The motions accordingly are in all respects granted.

Supplemental Opinion.

Upon the request of proctors for the amplification of its opinion, the court states that in that part of its opinion which reads "By its agreement to operate the 'Yaka,' the Waterman Steamship Corporation agreed to maintain the 'Yaka' in trade. This was a direct obligation of the Waterman Steamship Corporation and can not be construed as an agreement to obtain others to perform that duty," the words "to perform that duty" were intended to mean the duty of maintaining the "Yaka" in trade.

The court further states that neither Operations Regulations No. 84 nor any other regulations were referred to, produced, or considered by the court. February 14, 1948.