WILLIAM B. GRANT, WILLIAM BRADSTREET, WILLIAM L. FLITNER, PETER GRANT, IN HIS OWN RIGHT AND AS ADMINISTRATOR OF THOMAS GRANT, DECEASED, ELIZABETH F. GRANT, ADMINISTRATRIX, WILLIAM S. GRANT AND GEORGE BACON, ADMINISTRATORS OF THE ESTATE OF SAMUEL C. GRANT, DECEASED, OWNERS OF THE AMERICAN SHIP CONSTELLATION, LIBELLANTS AND APPELLANTS, *v.* CORNELIUS POILLON, RICHARD POILLON, JAMES L. VARICK, IMPLEADED WITH H. JOHNSON, HICKS, BAILEY, WILLIAM Y. CLARK, DEAN W. W. HINCHEN, C. H. CLARK, AND D. D. MILLER, RESPONDENTS AND APPELLEES.

Where the master of a vessel was also part owner, and made a contract of affreightment with a lumber company, of which he was also a member, and the cargo was consigned to the master, the case is not within admiralty jurisdiction, but appropriate to that of a court of chancery.

THIS was an appeal from the Circuit Court of the United States for the southern district of New York, sitting in admiralty.

It will be perceived, by the caption, that Flitner was one of the libellants, and, as he was also a member of the Constellation Lumber Company, he was on both sides of the case.

The circumstances under which the libel was filed are stated in the opinion of the court. The District Court dismissed the libel; and upon an appeal, this decree was affirmed by the Circuit Court. The libellants then appealed to this court.

The case was argued by *Mr. Goodrich* for the appellants, and submitted on a printed argument by *Mr. Donohue.*

*Mr. Goodrich* made the following points, viz:

I. The contract which is set forth in the bill of lading, and the services performed under it, appertain to the admiralty and maritime jurisdiction, and the libellants are entitled, *prima facie,* to its assistance.

II. The libellants, as owners of the ship, have not made any agreement with the owners of the cargo, by which the rights or remedies of the libellants, derived from the contract set forth in the bill of lading, have been diminished.

III. The agreement which Flitner made with the respondents does not purport to bind the owners of the ship; Flitner, as master, or as part owner, had no implied authority to bind the ship, or its owners, to such an agreement, and no express authority to that effect is shown.

IV. Assume that some portion of the freight-money would be due to Flitner, upon a statement of an account between the

owners of the ship; and that Flitner, by agreement with the respondents, (to which the ship and its owners were no party,) is bound to contribute to the payment of the freight-money, and thereupon, to the extent of such contributory share, the respondents have an equity against Flitner to *retain* his share of the freight-money; such equity does not change the character of the contract set forth in the bill of lading, or the rights of the libellants under it, or take away the admiralty and maritime jurisdiction which attached, as an incident to the contract, if I may so say, the moment it was entered into, and continued, when the libel was filed.

*a.* The contract into which the owners of the ship entered is entirely within the admiralty and maritime jurisdiction. If they had made a contract principally appertaining, in its subject-matter, to some other jurisdiction, and only incidentally embracing matters of a maritime character, they might have been obliged to resort to a court of common law, or to a court of equity; but not having entered into any such contract, they are not excluded from the admiralty by any equities which the respondents may have against Flitner, by reason of a contract with which neither the ship nor its owners are in privity, and which has no connection with the contract evidenced by the bill of lading. (The Pacific, 1 Blatchford, 569; Le Gaux *v.* Eden, Douglas, 606.)

V. There is no averment, in the answer of the respondents, that Flitner has not contributed to them all which he was bound to contribute; it contains no averment that any sum, upon a statement of an account between the owners of the ship, would be due to Flitner from the other part owners. There is no foundation for any subsisting equity in favor of the respondents.

VI. Flitner, as master, in making the contract set forth in the bill of lading, undertook to bind the owners of the ship, including himself, as the party on the one side contracting, to and with the owners of the cargo, excluding himself, as the contracting party, on the other.

*a.* The libellants, from the facts in proof, have a right to say that the respondents, knowing their relation to Flitner, meant to bind themselves in the manner suggested. (Brown on Actions at Law, 133, 134; Robson *v.* Drummond, 2 B. and Ad., 303; Sims et al. *v.* Bond, 5 B. and Ad., 389.)

*c.* The respondents having received the consideration and benefit of the contract, set forth in the bill of lading, which they entered into with Flitner, the agent of the libellants, cannot in any manner, or for any purpose, set up a private agreement made by themselves with Flitner, so as to defeat or impair the

rights or remedies of the libellants, under their bill of lading. (Catts *v.* Phalen, 2 How., 381; Bradford et al. *v.* Williams, 4 How., 588; Van Rensselaer *v.* Kearney, 11 How., 326; Curran *v.* Arkansas, 15 How., 309; Philadelphia, Wilmington, and Baltimore Railroad *v.* Howard, 13 How., 326; Comer *v.* Jackson, 4 Pet., 83 to 87; Comth. *v.* Heirs of Andre, 3 Pick. Rep., 324; The Repulse, 2 Wm. Robinson Rep., 399; Pitt *v.* Chappelow, 2 M. and W., 6, 15, 19, 20; The Frederick, 1 Dodson Adm. Rep., 266; Bacon *v.* Robertson, 18 How., 480.)

*d.* The libellants could not have been compelled to make delivery of the cargo without payment of freight; and upon refusal by the respondents to pay, might have had a sale under the admiralty; the respondents, upon an offer to pay freight, and a refusal of the libellants to deliver the cargo, might have proceeded against the libellants in the admiralty, and the libellants could not have resisted by pleading the private agreement of Flitner with the respondents.

VII. The non joinder of Flitner, as party respondent, cannot avail as ground of exception or defence.

*a.* It should have been set up by way of exceptive allegation, and not in the answer. (Reed *v.* Hussey, Blatch. and Howl., 525; 2 Conkling Adm. Juris., 583, 584, 585; Pratt *v.* Thomas, Ware Rep., 427; Certain Logs of Mahogany, 2 Sum. Rep., 589; Sheppard *v.* Graves, 11 How., 509; Conard *v.* The Atlantic Ins. Co., 1 Peters, 386, 450; De Wolf *v.* Rabaud, 1 Peters, 476, 498; Sims *v.* Handley, 6 How., 1; Smith *v.* Kernochen, 7 How., 198; Evans *v.* Gee, 11 Peters, 80.)

*b.* If it may be set up in the answer, it must be regarded as an exceptive allegation; and as such it is insufficient, because it does not show who are the owners or members of the Constellation Lumber Company, or that they are unknown and cannot be described.

*c.* Flitner, as master and part owner of the ship, is a proper party libellant; the respondents are estopped, by their contract with him, as the agent of the libellants, to set up an adverse private interest created by themselves.

*Mr. Goodrich* cited, also, the following authorities: Waring *v.* Clark, 5 How., 541; Parsons *v.* Bulford, 3 Peters, 447; The Catherine, 6 Notes of Cas. Ecc. and Mar. Supp., 43, 49; Mereton *v.* Gibbens, 3 D. and E., 267; The Repulse, 5 Notes of Cas. Ecc. and Mar., 348, 350, 351; Abbott on Shipping, 7 Lon. edi., 105, sec. 4; The Lady Campbell, 2 Hag. Adm., 14, note; Willard *v.* Dorr, 3 Mason, 161, 171; The England, 5 Notes Cas. Ecc. and Mar., 173, 174; Collyer on Partnership, 4 Am. edi., sec. 719; Greenl'af *v.* Queen, 1 Peters, 149.

*Mr. Donohue* made the following points:

*First.* Flitner was a proper party respondent in the court below; and until he is made a party, no further proceedings should have been had in the court below; and this was no ground for exception. The only ground for exception to the libel for the causes is rule XXXVI, of the Supreme Court. The persons composing the so-called Constellation Lumber Company, of which he was one, being partners, are all liable *in solido;* and the objection being taken by answer, they cannot proceed until he is made a party defendant.

*Second.* Ships being made "to plough the seas, and not lie by the walls," and as all the owners owning from a sixty-fourth to a half cannot act at once, one owner must. (See Story on Partnership, sec. 418.) And his contracts are the contracts of all in the employment of the vessel (Story on Agency Part., sec. 419) or her repairs. Flitner was not only master, but part owner, acting for all.

*Third.* Supposing Flitner to have only been master, the facts show a ratification of his act, and full authority.

1. The vessel in New York, without cargo, with all the owners within one day (by mail or travel) of the vessel, they of course knew what was going on.

2. A contract, made 22d September, to go *perhaps* to Callao at one freight, *perhaps* to the Sandwich Islands at another, *perhaps* to California at a different one—under this, goods were shipped, 12th of November, nearly two months after. Is it to be supposed that a vessel of this size should be about starting on such a voyage, without the other owners knowing and approving of the act? Is this a fair conclusion of law or fact?

3. Their entire approval and even ratification of his act is apparent from all the circumstances.

*Fourth.* The libellants, including Flitner, were all partners in the sailing of the vessel. (Abbott on Shipping, p. 111; Story on Partnership, secs. 441, 444, 408.) And notice to one is notice to all. (See Story on Partnership, secs. 107, 108.) They were therefore chargeable with notice of this contract when it was made, and have never disapproved of it, if they had the right. They had notice from 22d of September to 12th November, before the ship sailed, with one partner acting, and did not attempt to disaffirm.

*Fifth.* The libellant, Flitner, is liable individually for the whole debt claimed to be due from the respondents to the libellants, as one of the partners in the Constellation Lumber Company, and he could be compelled to pay, and be left to his action for a settlement with his copartners. A payment to him, as one of the owners of the whole debt, would discharge the

indebtedness of the company to the owners of the ship, and leave them to their account for a settlement against him in equity. (Story on Part., sec. 419.)

*Sixth.* If Flitner is, in fact, the creditor of his co-owners, exclusive of this claim, then, in law, such debt due from them to him operates to extinguish the debt to the whole jointly; for with one the other is paid. It nowhere appears that Flitner is, in fact, their debtor, and most likely is their creditor; and he now seeks in this way to collect out of his partner, money not of right payable to him or them. (See Abbott on Shipping, pp. 130, 131, sec. 5; see, as to such rights, Story on Part., sec. 406.)

*Seventh.* The whole of the facts of this case show it to be one of purely equitable cognizance.

1. A captain and partner, owner in a ship wanting freight, entering on her behalf into a bargain to get a cargo, simply to employ that vessel.

2. The purchase, by a company, of which such owner is one, of the cargo, for the purpose of shipment, and a loss of all the outlay, and $2,300 besides.

3. That the ship realizes $11,000, and over, on the shipment.

4. Large claims on the part of the copartners for the detention of the cargo, and other acts of the captain.

Under these circumstances, equity would certainly give the partners owning that capital some show in the distribution of the remnants, as well as the ship her freight; but this is an attempt, by bringing the case into a court not competent to fully dispose of the matters, and clogged with restraints, to avoid the just responsibility the parties have assumed, and to make the Poillons pay the whole, (besides losing their investment,) of which they should only pay one-half.

*Eighth.* But suppose, as has been and is contended by the libellants, that the bill of lading is entirely independent and distinct of the original contract, and has no necessary connection with it, then this case assumes a phase which would prevent a recovery in any form of action, or in any forum, because—

1. By the terms of the bill of lading, the cargo is consigned to one of the libellants, and a part owner of the ship.

2. The case shows that he accepted the consignment, and actually sold and disposed of the property consigned.

3. By law, having accepted the consignment, he became liable for the payment of the freight; and, by the terms of the bill of lading, he actually covenants to pay the freight reserved in it "unto William L. Flitner, or his assigns, he or they paying freight." ( *Vide* bill of lading.)

4. This case would present the anomaly of a party suing on an instrument whereby not only by law he is himself liable for the payment of the sum demanded, and which, by the terms of the instrument upon which the suit is instituted, he expressly covenants to pay.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal in admiralty from the Circuit Court for the southern district of New York.

The libellants, Grant and others, are the sole owners of the ship Constellation, and they bring an action of affreightment, civil and maritime, against the respondents, and allege that William L. Flitner was master of the ship; that the respondents were copartners, under the name of the "Constellation Lumber Company;" and that, on or about the 12th November, 1849, they agreed to ship on board the Constellation, then lying in the port of New York, 230,655 feet of lumber and 29,700 cypress shingles, to be delivered at the port of Valparaiso, Sandwich Islands, or San Francisco, unto the above-named Flitner, or his assigns, he paying the freight upon the same. The ship proceeded on her voyage, and delivered the lumber and shingles unto the said William L. Flitner, at San Francisco, on or about the —— day of ——, in the year 1850. That there was due for the freight of the lumber, with primage, the sum of $13,944.02, of which sum Flitner paid $11,494.93, which were the net proceeds of the lumber, leaving a balance of $2,449.09 due and unpaid; and it is averred that Flitner, acting as consignee, and in making sale of the lumber, was the agent of the respondents, and a decree for the payment of this balance by the respondents is prayed.

The respondents deny that they compose the company, and that Flitner acted as their agent, &c.; and they say that the lumber was shipped on account of the said vessel and of said company, the said vessel being interested in said company, and that the transaction was a partnership one, and not a subject of jurisdiction in this court; that Flitner, named as a libellant, was and is interested, and one of the parties in the "Constellation Lumber Company," and is a proper party respondent herein; that the subject-matter of the suit is not within the admiralty or maritime jurisdiction of this court, and of which it has no cognizance.

It was agreed that ten persons named—about the 22d of September, 1849—of whom William L. Flitner was one, constituted the lumber company, each individual taking one share, not to exceed in value five hundred dollars, with the exception of Flitner, who took two shares, and Hicks and Bailey also

took two. That Flitner was the agent of the company and the consignee, a commission of five per cent. to be paid to him; that the ship Constellation belonged to the libellants, and that Flitner was master and part owner; that the lumber company purchased the cargo, and it was shipped the 12th November, 1849, and a bill of lading was signed by Flitner.

The proof shows that the lumber was sold at San Francisco for the prices stated, and that the proceeds of the sale, after deducting commissions, fell short of paying the freight, the sum named.

The principal question is, whether the case made is within the admiralty jurisdiction. That it would not be within the admiralty jurisdiction in England is clear. In general, contracts upon land, though to be executed on the sea, and contracts at sea, if to be executed on the land, are not cognizable by the English admiralty. There are some exceptions to this rule in that country; but none, it is believed, which affect the question now before us. There are conflicting decisions as to the admiralty jurisdiction in England, and also in this country. It may be difficult, if not impracticable, to state with precision the line of this jurisdiction, but we may approximate it by consulting the decisions of our own courts.

In the case of Willard *v.* Dorr, 3 Mason, 91, it was held, "no suit for services performed by the master, as a factor, or in any other character than that of master, is cognizable in the admiralty." And again, in Plummer *v.* Will, 4 Mason C. R., 380, it was said, "a contract of a special nature is not cognizable in the admiralty, merely because the consideration of the contract is maritime. The whole contract must, in its essence, be maritime, or for compensation for maritime service." In 11 Peters, the Steamboat Orleans *v.* Phœbus, it was said the admiralty has no jurisdiction in matters of account between part owners. And, further, "the jurisdiction of courts of admiralty, in case of part owners, having unequal interests and shares, is not, and never has been, applied to direct a sale upon any dispute between them as to the trade and navigation of the ship engaged in maritime voyages, properly so called." (Ib.)

The jurisdiction of courts of admiralty is limited, in matters of contract, to those, and to those only, which are maritime. (Ib.)

An agreement by the master of a vessel to pay wages, may be sued upon in the admiralty; but a stipulation in the same contract to pay a sum of money in case the voyage should be altered or discontinued, can be enforced only at common law. (L. Arira *v.* Manwaring, Bee's Rep., 199.) The admiralty jurisdiction of the District Courts of the United States, being ex-

clusive, cannot be extended to cases of law or equity, cognizable by the Circuit and State courts, under the 11th section of the judiciary act. (1 Baldwin, 554.)

A contract between two persons, one of whom had chartered a vessel, whereby he was to act as master, and the other as mate of the vessel, and the two were to share equally in the profits of the contemplated voyages, was held not to be within the admiralty jurisdiction. (The Crusader, Ware's Rep., 437.) A distribution cannot be claimed in the admiralty, except by those who have a lien. (1 Pet. Ad., 223.)

The lumber company was formed to engage in an enterprise of shipping lumber to San Francisco. Twelve shares were taken by the company, consisting of ten persons, each having one share of the value of five hundred dollars, and two of them had two shares each, one of them being the master of the vessel. He was also a part owner of the vessel, the consignee of the cargo, and had a right of primage. As part owner of the vessel, he was entitled to his share of freight; and as being a member of the lumber company, having two shares in it, he was proportionately liable for the freight. In his capacity of master he was entitled to primage, and as consignee he was also entitled to compensation. Now, this individual, in interest, is both plaintiff and respondent, and has claims in his capacities of master, consignee, and agent. The proceeds of the sale of the cargo, after paying commissions, left a balance due for freight of $2,449.09.

Here is a complicated account to adjust, apportioning the loss between the members of the lumber company, exacting from them what may be necessary, not only to pay the balance of freight due, but whatever may be required to discharge what may be due to the master as part owner of the ship, as master, consignee, or agent, at the same time holding him liable, as having two shares in the lumber company. And in an enterprise in which the whole of the capital has been sunk, leaving a large sum due for freight, it would seem that some inquiry might reasonably be made into the conduct of the master in the various capacities in which he acted. And it is probable that, to settle the controversy, a procedure against the members of the lumber company may become necessary, to compel them to contribute respectively and equally what may be necessary to meet the exigency. It is clear that the exercise of the powers indicated do not belong to a court of admiralty, but are appropriate to a court of chancery.

The decree of the Circuit Court is affirmed, with costs.