Costas **HADJIPATERAS**, Nicholas Hadjipateras and Dimitri Dracos, Appellants,

v.

**PACIFICA, S. A.,** and George Tsakalotos, Appellee.

No. 18921.

United States Court of Appeals
Fifth Circuit.

May 15, 1961.

Jones, C. J., dissented.

Charles Kohlmeyer, Jr., New Orleans, La., for appellants.

John G. Poles, New York City, Donald A. Lindquist, New Orleans, La., W. J. Sheridan, Jr., Balboa Heights, Canal Zone, for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The substantive question in this interlocutory appeal is whether a libel *in personam* with writ of foreign attachment was a claim within the admiralty jurisdiction of the District Court. If not, the writ of attachment pursuant to which the SS Pan-Agiotis D. now remains in the Marshal's custody should be vacated since the respondents assert an inability to post a satisfactory release of attachment bond. A question of our own jurisdiction under the Interlocutory Appeals Act, 28 U.S.C.A. § 1292(b), is presented at the threshold. Both matters are better understood if we outline briefly just what occurred here and below.

On March 24, 1961 a libel *in personam* was filed in the District Court for the Canal Zone. It was brought by the owners [1] of the SS Athenoula (formerly the SS Ketty D.) against four named respondents.[2] In the traditional form, 2 Benedict, Admiralty § 291 at 355, Form No. 155, the libel prayed that if none of the respondents could be found within the District, a writ of attachment be issued pursuant to the Admiralty Rules.[3] Writ of attachment issued against the SS Panagiotis D., alleged to be the property of the respondents. The SS Panagiotis D., then transiting the Canal, was seized and remains in the custody of the Marshal because of the asserted inability of the

---

1. The libellants (appellees here) were Pacifica, S.A. and George Tsakalotos (owner of the majority of capital stock of Pacifica).

2. The respondents named in the libel (appellants here) are: Jason Shipping & Trading Corp. and the three individuals, Costas Hadjipateras, Nicholas Hadjipateras and Dimitri Dracos, each of whom is alleged to be a stockholder, officer and director of Jason Shipping exercising complete dominion and control over the operations of Jason Shipping.

3. U.S.Sup.Ct.Adm.Rule 2, 28 U.S.C.A.; District Court Local Admiralty Rule 23. See 2 Benedict, Admiralty §§ 288–294 at 345–305.

respondents to file the necessary security for her release.[4]

The libel alleged that Pacifica, S.A., as owner of the SS Ketty D., had entered into a contract with respondent Jason Shipping Company for the management and operation of that vessel for a stated period of time. Under this contract the managing agent was to operate the vessel, obtain freight or freight engagements, collect the freight monies and, after deducting all operating expenses, remit the balance to the owners. But, so the libel and supporting papers continued, after performing the contract for a time and collecting freights there remained $250,000 which belonged to the owners which the managing agent and the other respondents wrongfully appropriated in breach of the contract. The libel sought a decree "against all of the respondents herein for the amount aforesaid [$250,-000], together with interest and costs * * * " with, of course, the usual catch-all "and that the libelants may have such other further and different relief as may be just." See 2 Benedict, Admiralty § 263 at 108, form 52.

■ The respondents on April 4, 1961, filed a motion to dismiss the libel and thereby vacate the attachment on the ground that this was a suit for accounting and was therefore beyond the admiralty jurisdiction. After briefs and arguments, the District Court denied the motions to dismiss on April 7, 1961. On the same day Proctors for respondents moved for an order allowing an appeal, and such an order was entered, also on April 7.[5] On April 17, and within ten days of the District Court's order declining to dismiss for want of jurisdiction, appellants-respondents filed with the Clerk and presented to a Judge of this Court an application with supporting affidavit. This was an application for an "immediate hearing" on the appeal and an order to show cause why the order of April 7 "denying the motion for dismissal * * * and vacating the foreign attachment should not be reversed and the libel dismissed and the foreign attachment * * * vacated." [6]

Following this ex parte presentation, this Court entered its formal show cause order of April 17 fixing April 27 as the time of hearing on this application for an immediate hearing of the appeal and the request for reversal and vacation of the attachment. Thereafter, on April 19, libelants-appellees filed their motion to dismiss the appeal because the order was neither a final one under § 1291 nor an interlocutory admiralty decree "determining the rights and liabilities of the parties" under § 1292(a) (3). A show cause order was issued for hearing along with the prior motions. Up to this time no formal certification by the District Judge for an interlocutory appeal under § 1292 (b) had been sought, obtained, or filed

---

4. On the argument it was asserted by appellants-respondents that the attachment of the SS Panagiotis D. was ineffective to vest jurisdiction over the person of these respondents since parties other than these respondents owned the vessel. See, e. g., Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 1950, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206. The record fails to indicate that this was presented to or acted upon by the Court below. We therefore do not rule on this facet.

5. Proctors resist change to their esoteric calling. Not since the statute was amended to conform to the notice-of-appeal practice of F.R.Civ.P. 73(b), 28 U.S.C.A., has it been necessary to secure an allowance of an appeal in admiralty,

28 U.S.C.A. § 1292, as amended, September 2, 1958, although previously it was beyond the power of the appellate court to supplant the formal allowance of an appeal by notice. Alaska Packers Ass'n v. Pillsbury, 1937, 301 U.S. 174, 57 S.Ct. 682, 81 L.Ed. 988. But this precautionary error perhaps accidentally affords an additional basis for a *nunc pro tunc* certification under § 1292(b).

6. On the preceding Wednesday, April 12, the matter was briefly and informally discussed by long distance telephone with another Judge and a time fixed for presentation of the papers in Chambers on Friday, April 14. At the Judge's request this was postponed to Monday, April 17, for presentation before Judge Rives in New Orleans.

here together with an application for allowance of such an appeal.

On April 26 respondents filed a motion with the District Court requesting reconsideration of the order of April 7 denying the motion to dismiss the libel for want of jurisdiction and a certification under § 1292(b). This was done on April 26 by a formal order entered *nunc pro tunc*.[7] During argument on April 27 this Court received a cabled copy of the order from the District Court.

 We think that there has been a substantial compliance with § 1292(b) so that this appeal is properly before us as an interlocutory order. If timely made and certified, there can be no question that it presents a matter that "may materially advance the ultimate termination of the litigation." Indeed, if appellants-respondents are correct on the lack of admiralty jurisdiction, the whole case ends once and for all. Neither the Court nor the parties should be put to the expense in time for a trial of such a possible congenital deficiency.

 On several theories the application is timely and the desirability of an appeal sufficiently certified. Since it is positive that the order was not a final judgment appealable under § 1291 and it seems almost as positive that it was not an interlocutory admiralty order under § 1292(a) (3), Pannizzo v. Lauro, 2 Cir., 1955, 228 F.2d 222, the District Court retained sufficient control of the case. Ex parte Watkins, 5 Cir., 1958, 260 F.

2d 548. Consequently, the amended order of April 26 can stand alone. It contains an adequate certificate, and presented to us as it was on argument on April 27, it was presented within the 10-day period following its entry the day before. Ordinarily the application to the Court of Appeals would be a formal one in writing, but § 1292(b) does not so prescribe.[8] The statute imposes no time limit on the Court of Appeals. Consequently, our actions now, and at the argument, constitute allowance of the interlocutory appeal.

 More than that, we think that the interlocutory appeal is properly before us by considering the order of April 26 as a *nunc pro tunc* amendment to the order of April 7. As our show cause order of April 17 reflects, the appellants-respondents presented to us their request for reversal and vacation of the attachment on April 17, a date within ten days of the order (April 7) appealed from. § 1292(b). In the meantime the District Court on April 7 entered an order allowing an appeal—an order now superfluous (see note 5, supra) apart from the new procedure of § 1292(b). On many prior occasions, in momentarily denying applications for mandamus, prohibition or the like under the all writs statute, 28 U.S. C.A. § 1651, or in dismissing appeals as improvidently taken, we have, where the 10-day period has long since expired, formally suggested that the matter be resubmitted to the trial court for rede-

---

7. The order, after reciting the earlier hearing and the order of April 7, went on to state that on further reconsideration the Court adhered to its decision but was of the opinion that the previous order involved "a controlling question of law" on which substantial ground for difference exists and that immediate appeal "may materially advance the *determination*" of the suit. This certificate under § 1292(b) was followed by detailed recitation of reasons why decision either way by our Court would advance final disposition. It further specified that "this order be entered *nunc pro tunc* in lieu of the order heretofore entered under date of April 7, 1961."

8. " * * * The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order * *." 28 U.S.C.A. § 1292(b).

Little formality is required by the statute. The District Judge must make the certificate and an application within ten days must be made to the Court of Appeals. No notice of appeal, however, is required preceding the application. See the following rules of the Court of Appeals: D.C.Cir., Rule 9½; 2nd Cir., Rule 9(d); 3rd Cir., Rule 11(2); 4th Cir., Rule 35; 6th Cir., Rule 8(2); 8th Cir., Rule 28; 9th Cir., Rule 38; 10th Cir., Rule 12, 28 U.S.C.A.

termination and a possible § 1292(b) certification by it. Ex parte Deepwater Exploration Co., 5 Cir., 1958, 260 F.2d 546, on remand, Deepwater Exploration Co. v. Andrew Weir Ins. Co., D.C., 167 F. Supp. 185; Ex parte Watkins, 5 Cir., 1958, 260 F.2d 548, certification held inadequate, 5 Cir., 271 F.2d 771, 772; Jewell v. Grain Dealers Mutual Ins. Co., 5 Cir., 1959, 273 F.2d 422; Ex parte Underwriters at Lloyds London (Gulf Shipside Storage Corp. v. Underwriters at Lloyds London), 5 Cir., 1960, 276 F.2d 209, 210, reversing, Schwabach & Co. v. Gulf Shipside Storage Co., D.C.E.D.La., 1959, 173 F.Supp. 105. Since the only possible relief open to appellants-respondents by way of an appeal on the date of application (April 17) for reversal and vacation of the attachment was under § 1292(b), we think it entirely proper for the formal, technical imperfections of that timely action to be corrected by the *nunc pro tunc* amendment of April 26.

■ Of course we must find our jurisdiction to hear a matter in a statute or authoritative rule. But this Court has invariably approached this in a way that avoids hypercritical technicalities in the construction and application of such statutes. We see this, for example, in our decisions concerning the time and character of a notice of appeal. Roth v. Bird, 5 Cir., 1956, 239 F.2d 257, 259; Des Isles v. Evans, 5 Cir., 1955, 225 F.2d 235, 236; Crump v. Hill, 5 Cir., 1939, 104 F.2d 36, 38; Carter v. Campbell, 5 Cir., 1960, 285 F.2d 68, 70–71.[9] We have followed this pattern as we seek to utilize this new remedy of an interlocutory appeal. Thus,

while a literal application of § 1292(b) would confine it to a "civil action" in keeping with the secondary meaning now attributed to that term by the Federal Rules of Civil Procedure, we held in Continental Grain Co. v. Federal Barge Lines, 5 Cir., 1959, 268 F.2d 240, 241–42, 1959 A.M.C. 2158, that it extended to admiralty cases as well. The Supreme Court by its affirmance agreed, 1961, 361 U.S. 811, 80 S.Ct. 79, 4 L.Ed.2d 59, 1961 A.M.C. 1.

■ Likewise, we have thus far resisted the temptation to chart out the types of cases or the circumstances in which this new type of an appeal should be allowed. The statute was framed in broad language and the term "controlling question of law as to which there is substantial ground for difference of opinion * * * " which "may materially advance * * * termination of the litigation * * * " avoids casting it in the unyielding molds of prior terms of procedural art. United States v. Woodbury, 9 Cir., 1959, 263 F.2d 784, 787.[10]

■ Each application is to be looked at then in the light of the underlying purpose reflected in the statute. Sperry Rand Corp. v. Bell Telephone Laboratories, Inc., 2 Cir., 1959, 272 F.2d 29; Mueller v. Rayon Consultants, 2 Cir., 1959, 271 F.2d 591. We need have no apprehensions about its abuse. For unlike many procedural facilities, this is committed wholly to Judges—and then only by a ¾ths majority.[11]

■ Moreover, it was a judge-sought, judge-made, judge-sponsored enactment.[12] Federal Judges from their prior

9. Other cases take a similar view. Randolph v. Randolph, 1952, 91 U.S.App. D.C. 110, 198 F.2d 956; Shannon v. United States, 1953, 93 U.S.App.D.C. 4, 206 F.2d 479; Kirksey v. United States, 1954, 94 U.S.App.D.C. 393, 219 F.2d 499; Boykin v. Huff, 1941, 73 U.S. App.D.C. 378, 121 F.2d 865; Blunt v. United States, 1957, 100 U.S.App.D.C. 266, 244 F.2d 355.

10. As the Woodbury case makes clear, the issue need not, for example, be dispositive to be a "controlling question."

11. Allowance takes affirmative action by the District Judge and a majority of a panel of the Court of Appeals. Thus three Judges out of four must concur.

12. The amendment was introduced pursuant to action by the Judicial Conference of the United States. After close and extended study by a committee under the chairmanship of Judge John J. Parker, its enactment was actively sponsored by the Conference. 1958 U.S.Code Cong. & Admin.News, Vol. 3, p. 5255; Hearings before Subcommittee No. 3 of the

professional practice, and more so from experience gained in the adjudication of today's complex litigation, were acutely aware of two principal things. First, certainty and dispatch in the completion of judicial business makes piecemeal appeal as ·permitted in some states undesirable. But second, there are occasions which defy precise delineation or description in which as a practical matter orderly administration is frustrated by the necessity of a waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of fact, of law, of substance or procedure, upon which in a realistic way the whole case or defense will turn. The amendment was to give to the appellate machinery of § 1291 through § 1294 a considerable flexibility operating under the immediate, sole and broad control of Judges so that within reasonable limits disadvantages of piecemeal and final judgment appeals might both be avoided. It is that general approach rather than the use of handy modifiers [13]—which may turn out to be Shibboleths—that should guide us in its application and in determining whether the procedure specified has been substantially satisfied.

▇▇▇ Thus the substantive correctness of the District Court's denial of the motion to dismiss for want of admiralty jurisdiction is properly before us. On that, we do not think it requires much discussion to demonstrate that the decision was the right one. Indeed, the only difficulty arises if we become mesmerized by the word "accounting."

To begin with, the contract is everything classically known as a maritime contract. It concerns a ship. It relates not only to a ship; its very purpose is to effectuate the physical, economic operation and employment of a vessel. And what is here in controversy are the fruits of such operation. The subject matter, in the sense of the *thing*, its purpose, and its result all center around the ship. It meets all of the tests both ancient and modern.[14] Kossick v. United Fruit Co., 1961, 81 S.Ct. 886; 1 Benedict, Admiralty, §§ 64–66 at 131; Gilmore & Black, Law of Admiralty §§ 1–10 at 20.

With that established—indeed we do not think that appellants-respondents either do or may challenge it—what is there about the present situation that takes a dispute arising from a maritime contract out of the admiralty jurisdiction? It is certainly not the remedy as such. For apart from the steps followed or principles applied (legal, equitable or both), what is sought is a simple decree for money. That is the aim of every libel for cargo damage, for payment of charter hire, for recovery under a marine insurance policy and nearly all admiralty tort and contract litigation. The decree, if obtained, will be simple in terms and swift in its satisfaction. It will require no extraordinary writs such as injunctions or possessory orders.

▇▇▇ Nor is there anything either offensive or foreign to the admiralty in the adjudicatory steps of fact or legal principle by which the claim is transmuted into the final decree for money. We heard much on argument about *indebitatus assumpsit* as though somehow the whole thing would strand on these ancient concepts. The argument apparently is that while the net amount remaining after deducting operating expenses from gross earnings would ordinarily be the fit subject of admiralty

Committee on the Judiciary on H.R. 6238 at p. 9. House Report No. 1667, 85th Cong. 2d Sess., pp. 1, 2, adopted the report of the Judicial Conference on this amendment as part of the House Report.

13. See, for example, "strictly construed," Milbert v. Bison Laboratories, Inc., 3 Cir., 1958, 260 F.2d 431, and "the 'big'

and expensive case," Bobolakis v. Compania Panamena Maritima San Gerassimo, S.A., D.C.S.D.N.Y.1958, 168 F. Supp. 236, 239–240.

14. While perhaps an affectation to search for the closest example, it passes that test also. United Fruit Co. v. United States Shipping Board Merchant Fleet Corp., D.C.D.1930, 42 F.2d 222.

jurisdiction while still retained by the managing agent, it somehow takes on an odious and common law flavor if this is not a mere good faith dispute over construction of the contract and the agent retains the money "wrongfully," that is by action comparable to absconding, concealment or dishonest misappropriation. This is too fine for us, just as it was for the Supreme Court when it rejected similar dialectic in Archawski v. Hanioti, 1956, 350 U.S. 532, 76 S.Ct. 617, 100 L. Ed. 676, 1956 A.M.C. 742. The test there announced was the broad one of the inherent maritime character of the underlying transaction. Resort to quasi contract principles does not oust the admiralty. As the Supreme Court concludes, "so long as the claim asserted arises out of a maritime contract, the admiralty court has jurisdiction over it." 350 U.S. 532, at page 535, 76 S.Ct. 617, at page 620. And if there ever were any real basis for doubting the capacity—if not the imperative duty—of the admiralty to consider equitable doctrines in arriving at just judgments, it was certainly dispelled in Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A., 1950, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206, 1950 A. M.C. 1089. If the admiralty has the power to penetrate fraud to say that a vessel standing in the name of one belongs in fact to another, and then effectively lays hold of that vessel, it is perfectly evident, especially with the availability of modern innovations such as declaratory judgments, 28 U.S.C.A. § 2201, that hoary expressions about equity in admiralty require careful re-evaluation. Gilmore & Black, Law of Admiralty § 1– 14 at 38.

 We face then the objection that this is a suit for an accounting. Despite the doubts which Archawski and Swift and other modern cases might cast, we assume that if it is an accounting as such, jurisdiction is foreclosed under the precedents.[15] But Swift, citing with ap-

proval W. E. Hedger Transportation Corp. v. Bushey & Sons, Inc., 2 Cir., 1946, 155 F.2d 321, 1946 A.M.C. 788, makes the principle clear. " 'It is true that a court of admiralty will not entertain a suit for an accounting as such: as, for example, an accounting between co-owners of a vessel, or between maritime adventurers, or between principal and agent, * * *. Nevertheless, it has never been true, when an accounting is necessary to the complete adjudgment of rights over which admiralty has independent jurisdiction, that it will suspend its remedies midway and require the parties to resort to another court.' " 339 U.S. 684, at page 692, 70 S.Ct. 861, at page 866.

Of course that is a sensible rule, and indeed one compelled by the necessity of things unless admiralty is to be confined to the simplest of transactions. It is an "accounting" here only in the sense that there must be a "counting." All of the collections and receipts by the managing agent must be determined and totaled. Then all of the expenditures and allowable deductions must be similarly ascertained. The expenditures are deducted from receipts and the balance remaining is the amount of the judgment. That is the problem, frequently complex, in suits or arbitrations under charter parties, in libels to recover general average contributions testing the propriety of the Average Adjustments, and for that matter in collision libels covering claims and cross claims for hull losses, detention, personal injuries, cargo damage, and the like.

 If, because the process of adjudication goes a step beyond 2 plus 2, the admiralty loses power, we would have the spectacle of things essentially maritime and thereby automatically within the constitutional supremacy clause, Kossick v. United Fruit Co., 1961, 81 S.Ct. 886, being forced into common law, or equity, courts for determination. Indeed, it would be even more absurd. It

---

15. Ward v. Thompson, 1859, 22 How. 330, 63 U.S. 330, 16 L.Ed. 249; Grant v. Poillon, 1858, 20 How. 162, 61 U.S. 162, 15 L.Ed. 871; Minturn v. Maynard,

1855, 17 How. 477, 58 U.S. 477, 15 L. Ed. 235; The Steamboat Orleans, 11 Pet. 175, 36 U.S. 175, 9 L.Ed. 677.

would, barring the accident of diversity of citizenship, send essentially federal problems to state courts since there is no jurisdiction on the civil side over a maritime cause of action. Romero v. International Terminal Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, 1959 A.M.C. 832, 835.

The contract is maritime. The controversy grows directly out of a claim of nonperformance of this contract. The relief sought is a money decree. Neither resort to equitable principles in adjudicating performance or nonperformance, nor the arithmetical process of treating evidentiary items in the determination of the amount of such decree, destroys in any way the admiralty jurisdiction. By none of these has the salt lost its savour.

Affirmed.

JONES, Circuit Judge (dissenting).

If I thought this Court had jurisdiction of this appeal I could agree with the majority that the district court had jurisdiction as a court of admiralty of the controversy which the libellant brought before it. But I think this Court does not have any jurisdiction over the appeal and therefore I dissent.

The majority of this Court, the district court, and the parties seem to be in agreement that this is an attempt to appeal from an interlocutory order and that compliance with 28 U.S.C.A. § 1292(b) is required in order to give this Court jurisdiction of the appeal. The majority is of the opinion that the requirements of the statute have been met. Notwithstanding that I stand before the majority stigmatized with the brand of being hypertechnically critical, I express, with conventional deference, my disagreement.

It does not seem to me that the assertion of jurisdiction is buttressed by the lack of knowledge of the appellants' esoteric proctors that the allowance of an appeal in admiralty is not required. I cannot find myself aided on the jurisdictional question by the filing of an application for an immediate hearing, by the entry of an order fixing a time for hearing, or by informal discussions with individual judges. None of these things, so it seems to me, have any relation to meeting the requirements of Section 1292(b). This section provides:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order; Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C.A. § 1292(b).

The chronological sequence of the events here pertinent,[1] as I view them, are as follows:

(a) On April 7, 1961, the district court entered the order[2] from which the respondents seek to appeal;

(b) On April 11, 1961, the respondents filed notice of appeal[3] in the district court;

(c) On April 19, 1961, the libellants filed in this Court their motion seeking

1. Omitting the unnecessary motion and order for the allowance of the appeal, motions and orders for setting hearings, and conferences, both informal and formal, with individual judges.

2. "Ordered, Adjudged and Decreed that the motion of the Respondents for an

order dismissing the libel and complaint herein and vacating the attachment of the vessel S/S Panagiotis D. by the Marshal of this Court, be and the same is hereby denied."

3. "Please take notice that * * * respondents in the above entitled cause,

to dismiss the appeal in which it was recited that the order was interlocutory and not appealable; and

(d) On April 26, 1961, the district court entered an order "nunc pro tunc in lieu of the order" of April 7, 1961.

The order of April 26 was, apparently,[4] the same as the order of April 7 except for the recital in the second order that the district court was of the opinion that "the order previously entered herein involves a controlling question of law * * * and that immediate appeal from the order may materially advance the determination of the litigation." There has been no application to this Court for permission to take an interlocutory appeal. The absence of the record of the Court's certificate, of the application and of the order seem to me to be something other than "formal technical imperfections" that can be disposed of by the delicate brush with the soft bristles.

Aside from these so-called formal technical imperfections there seems to me to be a further reason which should require that the appeal be dismissed. On April 7 the order was entered from which an attempt was made to take an appeal. It may be that the statutory requirement that the district judge shall state "in such order" his opinion that an immediate appeal will advance the ultimate termination, is a formalistic and technical matter that ought not be insisted upon. But it is not formalistic nor technical, in my belief, that the appeal be taken within the time authorized by the statute. This Court may permit an appeal from an order not otherwise appealable if, as the statute says, "application is made to it within ten days after the entry of the order." The ten days ran from April 7. During the time allowed there had been no application to this

Court permitting the appeal but nearly twice the ten days had passed before the district judge stated the opinion that was a prerequisite to making the "within ten days" application to this Court.

That the Congress intended to require that application to the Court of Appeals be made within ten days from the entry of the order from which the appeal is sought is shown by the report of the Senate Judiciary Committee from which I quote:

"H.R. 6238 would place the existing provisions of section 1292 in subsection (a) of that section, and would add a new subsection (b), by virtue of which it would be possible for a district judge in a civil action to make an order not otherwise appealable under section 1292 subject to appeal by stating in writing in his order that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Following the issuance of such a written statement, as a part of the court's order, the litigant may make an application to the court of appeals within 10 days after the entry of the order to permit an appeal therefrom.

\* \* \* \* \* \*

"Another protection against delay which is contained in this legislation is the provision which requires a litigant to make application within 10 days after the entry of the order if he desires to take such an appeal." S.Rep. 2434, 85th Cong.2d Sess. U.S. Code Cong. & Adm.News 1958, p. 5255.

hereby appeal to the United States Court of Appeals for the Fifth Circuit from the decree of this court entered herein the 7th day of April, 1961."

4. It was not a part of the record on appeal nor has it subsequently been made a part of the record. It was before the court, if at all, only in the form of a

telegraphed, and, of course, uncertified copy which was delivered during argument. A copy of the order, attested as a true copy by the Clerk of the district court, was received by the Clerk of this Court the day after the matter was submitted.

The taking of the appeal was conditioned upon the inclusion in the order of the district judge's opinion of the desirability of an immediate appeal. After the time for compliance with the condition had elapsed and the period for making application for permission had expired, the majority restored the extinct right by a roll back of the calendar. By the determination expressed in the majority opinion, the district court may, by nunc pro tunc orders or amendments of orders, extend the time for taking an appeal. This seems to me to violate the provisions of 28 U.S.C.A. § 2107.[5] Not only had the ten days fixed by Section 2192(b) expired on April 26th, but the fifteen days prescribed by Section 2107 had gone by. Except as permitted by statute in the case of excusable neglect based on failure to learn of the entry of the judgment, order or decree, it has not heretofore been the rule that the district court has power to extend the time for appeal. Knowles v. United States, 5 Cir., 1958, 260 F.2d 852. See also Padgett v. United States, 5 Cir., 1959, 272 F.2d 774; Guiberson Corporation v. Equipment Engineers, 5 Cir., 1958, 252 F.2d 431; Virginia Land Co. v. Miami Shipbuilding Corporation, 5 Cir., 1953, 201 F.2d 506; Lejeune v. Midwestern Insurance Co., 5 Cir., 1952, 197 F.2d 149; Crump v. Hill, 5 Cir., 1939, 104 F.2d 36. Of the decisions of this Court, cited by the majority to avoid the hypercritical technicalities, of jurisdictional requirements, there are those which construe applications to appeal in forma pauperis, filed within the time for taking an appeal, as substantial compliance with the requirement for filing notice of appeal;[6]

another treats a waiver of service of notice of appeal as the equivalent of a notice of appeal;[7] while still another permitted an order allowing the appeal on the original record to be regarded as the equivalent of a notice of appeal.[8] It may be noted that in the case last cited the Court concluded that, under the facts of the case a notice of appeal had been timely filed.

It seems to me that when ten days had elapsed after the entry of the district court's order without any opinion of the district judge, as the statute requires, and without any application being made to this Court for permission to appeal, as the statute requires, this Court did not require and could not have acquired any jurisdiction of an appeal from such order. I am not persuaded, as the majority seems to suggest, that we should assert jurisdiction over the appeal because the matter could come up on another appeal timely taken from another order containing proper recitals. I am not convinced that this could be done, and I would not decide that it could or could not be done by an advisory opinion. If the requirements for conferring jurisdiction are not met, we do not have jurisdiction and should not attempt to exercise it. The desirability of deciding a question is not one of the jurisdictional tests.

There are, I think, other grounds upon which the majority opinion is untenable but no other reasons need be stated if, as I believe, there has been a failure to do what the statute requires within the time the statute requires that it be done. Being so minded, I

Dissent.

---

5. In any action, suit or proceeding in admiralty, the notice of appeal shall be filed within ninety days after the entry of the order, judgment or decree appealed from, if it is a final decision, and within fifteen days after its entry if it is an interlocutory decree.

6. Des Isles v. Evans, 5 Cir., 1955, 225 F.2d 235; Roth v. Bird, 5 Cir., 1956, 239 F.2d 257.

7. Crump v. Hill, 5 Cir., 1939, 104 F.2d 36.

8. Carter v. Campbell, 5 Cir., 1960, 285 F.2d 68.