No. 84–559.   PERALTA SHIPPING CORP. *v.* SMITH & JOHNSON (SHIPPING) CORP.   C. A. 2d Cir.   Certiorari denied.   JUSTICE BRENNAN would grant certiorari.

JUSTICE BLACKMUN, with whom JUSTICE MARSHALL joins, dissenting.

The admiralty jurisdiction of the federal courts extends generally to a transaction that " 'relates to ships and vessels, masters and mariners, as the agents of commerce.' "   *Kossick* v. *United Fruit Co.*, 365 U. S. 731, 736 (1961), quoting 1 E. Benedict, Admiralty 131 (6th ed. 1940).   Notwithstanding the broad sweep of the admiralty jurisdiction, this Court, since the time of its single-page opinion in *Minturn* v. *Maynard*, 17 How. 477 (1855), has refused to extend admiralty jurisdiction to disputes involving general agency contracts that call for "husbanding" a vessel, that is, arranging for the performance of the various services that are preliminary to maritime movement.   This case presents an opportunity to address the continued vitality of this much-criticized exception to admiralty jurisdiction, an exception that has been

applied inconsistently and that has created unnecessary confusion in the federal courts.

Petitioner Peralta is the general agent in the United States for an operator of several oceangoing cargo vessels. In 1979, it executed a sub-agency agreement with respondent Smith & Johnson whereby it appointed respondent as "Gulf agents" responsible for arranging services for the principal's vessels calling on ports between Brownsville, Tex., and Tampa, Fla. Under the agreement, respondent promised to act as the "husbanding agen[t]" by providing for services such as

> "arranging for entrance and clearance of vessels at the Custom House, execution of all Custom House documents incidental thereto, arranging for fuel, water, provisions, emergency repairs, port charges and other similar matters, and for stevedoring, storage and other cargo handling; arranging for tugs,"

and a number of other services directly involved with the operation of vessels while at port preparing for departure. See 739 F. 2d 798, 799 (CA2 1984).

Two years after the agreement was signed, petitioner commenced this action in the United States District Court for the Southern District of New York. Relying on the court's admiralty jurisdiction, petitioner alleged that respondent had breached the agency agreement. It sought an accounting and recovery of money said to have been wrongfully retained by respondent. In particular, Peralta sought to recover freight collected on vessels and not turned over to it, and money advanced by petitioner to pay suppliers but diverted by respondent. Addressing cross-motions for summary judgment, the District Court on its own questioned its subject-matter jurisdiction. It concluded that the sub-agency "husbanding" contract under which respondent acted as local port agent for the principal was not a maritime contract within the court's admiralty jurisdiction. It therefore dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(h)(3).

The Court of Appeals affirmed, 739 F. 2d 798 (CA2 1984), holding that it was constrained by *Minturn, supra,* and those Second Circuit cases that had faithfully adhered to the rule established in *Minturn* that admiralty jurisdiction does not extend to general agency or sub-agency "husbanding" contracts. 739 F. 2d, at

802–803. The court declined to narrow the scope of *Minturn* by finding an exception for husbanding sub-agency contracts that provide services necessary for the continuing voyage, rather than services preliminary to the voyage, though it recognized that the Ninth Circuit had taken this approach in *Hinkins Steamship Agency* v. *Freighters, Inc.*, 351 F. Supp. 373 (ND Cal. 1972), aff'd, 498 F. 2d 411 (1974). See 739 F. 2d, at 803–804. Finally, the court recognized that the *Minturn* rule made little sense in light of the policy concerns underlying the grant of admiralty jurisdiction—the federal interest in promoting and protecting the maritime industry. See 739 F. 2d, at 804. Though it "would welcome" a decision from this Court overruling *Minturn,* because agency and sub-agency agreements are clearly an integral part of maritime commerce, and thus should be included within the admiralty jurisdiction, it recognized that it was without authority to issue such a decision, and that " 'only the Supreme Court should do it,' " quoting *Admiral Oriental Line* v. *Atlantic Gulf & Oriental S.S. Co.*, 88 F. 2d 26, 27 (CA2 1937). See 739 F. 2d, at 804.

"The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." *Kossick* v. *United Fruit Co.*, 365 U. S., at 735. Generally, however, contract actions that relate to maritime service or maritime transactions have been understood to fall within the admiralty jurisdiction of the federal courts. Though the need for bright-line rules in this area is evident, the line drawn in *Minturn* has been criticized widely and severely because it excludes so much that obviously concerns maritime transactions. Thus G. Gilmore & C. Black, Law of Admiralty 28, and n. 94b (2d ed. 1975), regard the rule as one of "dubious defensibility," and have predicted that, when this Court reaches the issue, it will hold that general agency and other vessel-management agreements fall within the admiralty jurisdiction, and will overrule *Minturn* and its progeny. See also 7A J. Moore & A. Pelaez, Moore's Federal Practice ¶.250, p. 3006 (1983) ("Quite clearly, such agreements are an integral part of, and in furtherance of, maritime commerce and, consequently, should be cognizable within the admiralty jurisdiction of the district courts").

Not only is the *Minturn* rule of dubious validity, but in efforts to narrow its application, the Courts of Appeals have developed a number of equally questionable exceptions to the rule that have

created confusion and disagreement. Thus, for purposes of determining admiralty jurisdiction, the Ninth Circuit would distinguish among maritime agency contracts based on a series of factors, including the degree of importance of the services rendered by the agent, the extent of supervision of performance, and the existence of a continuing relationship between agent and principal. *Hinkins, supra.* The Fifth Circuit appears to have taken the position that *Minturn* applies only to an action for an accounting. See *Hadjipateras* v. *Pacifica, S.A.*, 290 F. 2d 697, 704, and n. 15 (1961).* The Second Circuit in the present case recognized that its decision was in conflict with these decisions of the Fifth and Ninth Circuits. See 739 F. 2d, at 803, and n. 4.

The conflict between the approaches to this question taken by the Courts of Appeals is reason enough to grant this petition, for uniformity and predictability in the maritime industry were the ends sought in the Constitution when federal-court maritime jurisdiction was created in the first instance. A substantial argument has been advanced that the rule established in *Minturn* improperly excludes from federal maritime juridiction disputes that directly concern the business of maritime commerce. In light of the strength of that argument, of the confusion and conflict in the courts, and of the need for a uniform rule, I would grant this petition.

I therefore dissent.

---

*"[T]he distinctions made by the courts in dealing with agreements with brokers and agents seem contrived and not based upon sound reason or policy." 7A J. Moore & A. Pelaez, Moore's Federal Practice ¶ .250, p. 3003 (1983).